### DAVID SEAMAN *v.* SYLVANUS S. WARD.

A judgment of nonsuit is no bar to another action for the same cause, although evidence upon both sides has been adduced, and the cause has been regularly submitted to the justice by both parties for decision, if a motion for nonsuit has been made and the decision thereon has been reserved.

The judgment of the justice must be declared by some official act within four days after the trial. It is not enough that it is decided in his own mind.

In order to maintain an action for use and occupation, there must be evidence of an actual and continual occupation during the whole period for which the party is allowed to recover.

The delivery and acceptance of the key of the leased premises is sufficient to establish the fact of occupation, which will be presumed to continue until an interruption thereof is shown.(a)

APPEAL by plaintiff from a judgment of the Marine Court. This was an action for use and occupation and in which the complaint was dismissed in the court below. The facts sufficiently appear in the opinion of the court.

*William H. Van Cott,* for the appellant.

*Hoffman & Pirsson,* for the respondent.

DALY, J.—The judgment in the former action was no bar. If no motion for a nonsuit is made, but the case is submitted to the justice by both parties for decision, he cannot render judgment of nonsuit; and if he enters such a judgment, it will be deemed and taken to be a judgment for the defendant. In this case, a motion for nonsuit was made, but the decision was reserved. It was, therefore, competent for the justice to give

---

(a) See *Tattersall* v. *Hass, post,* p. 56.

judgment of nonsuit. The judgment, however, was of no effect. It was not rendered within four days after the trial. It was admitted, on the trial, that Justice McCarthy rendered judgment, *in his mind*, within the four days, though it was not entered until afterwards. There is no such thing as a judgment rendered in the mind of the justice. Judgment is a judicial act, not a mental resolution. It is not enough that the judge concludes to render judgment; he must declare it. He must declare it by an official act, such as endorsing an entry or minute of his decision upon the process returned before him, from which the clerk dockets or registers the judgment, as it has been rendered by the justice (2 Rev. Law, p. 383, § 110, p. 387, 123; *Figaniere* v. *Jackson*, 2 Abbott, 237).

The plaintiff established sufficient to entitle him to recover for use and occupation. He proved that his agent, Loyd, made a verbal agreement with the defendant for the renting of the premises; that Loyd rented them to the defendant from October until May, 1855, and he proved admissions made by the defendant in the middle of October, to the effect that he had hired the house and paid a big rent. The house was to be put in good order. Ward, the defendant, objected that it was not in order, and then saw Seaman, the plaintiff, who agreed to put it in order. The keys were delivered to Ward by the mechanic employed by the plaintiff to repair the house and put it in order. He fitted the keys throughout the house, according to Ward's directions. The repairs were made under Ward's direction, and, by the mechanic's testimony, to Ward's satisfaction. Mrs. Ward gave directions where she would have some wash-basins placed, Ward being present, and her directions were complied with. The walls were first whitened, but the whitening rubbed off, and Ward objected. Subsequently the plaintiff agreed to paint the walls. They were accordingly painted, but Ward objected that the painting had not been well done and that the house was out of order. It was shown by two witnesses that the painting throughout was well done, and by another witness that Ward gave directions how the painting was to be done, and they

were complied with. He pointed out to the witness some places that wanted to be touched up, and they were touched up according to his directions. While the house was being repaired, Ward sent women to clean it. They were engaged in cleaning it about the 20th of October. He also told the plaintiff's agent, Loyd, either that he had or was going to send a ton of coal to the house, and the witness saw a load of coal there the latter part of October, about the time when Ward's employees were engaged in cleaning. When the repairing was done, Seaman brought an agreement in writing, but Ward refused to sign it, declaring that the house was not in the order it was to be put in. Seaman contended that the house was let, but Ward declared that "it was not put in such order as agreed to by Seaman, and he would not take it." After that neither party would acknowledge that he had anything to do with the house, and the agent, Loyd, upon his own responsibility and without the authority of either, let the house to another tenant. When this tenant went into possession did not appear, but the house was rented to him by Loyd about a month after Seaman presented the written agreement to Ward and Ward refused to sign it. It further appeared that Ward objected to the neighborhood and to the walls being rough, and Loyd heard Mrs. Ward say that she did not like the neighborhood.

Under the English statute of 11 Geo. II, chap. 19, § 14, and the former statute of this state, which was substantially the same, it has been repeatedly held, that where the tenant has entered into an agreement to take the premises for a definite period and has acquired thereby the legal right to the possession, that he is liable in an action for use and occupation for the whole period agreed upon, whether he actually occupies or not. *Whitehead* v. *Clifford*, 5 Taun. 518; *Gibson* v. *Conthorpe*, 1 Dowl. & Ryl. 205; *Baker* v. *Hollzfoll*, 4 Taun. 45; *Izon* v. *Gorton*, 5 Bing. N. C. 501; *Teneir* v. *Judson*, 6 Bing. 206; *Little* v. *Martin*, 3 Wend. 219. In *Wooley* v. *Walling* (7 C. & P. 610), it was held, that where the agreement is to let from a future time, there must be an entry and some occupation under it, though in that case

it was said that if the letting was immediate it might be different; and in *Jones* v. *Reynolds* (id. 335), it was intimated that a taking of possession was at least essential to charge a tenant for use and occupation under the agreement, and this appears to be the present English doctrine. *Edge* v. *Stafford*, 1 Cromp. & Mees. 391; *How* v. *Kennet*, 3 A. & E. 659; *Sullivan* v. *Jones*, 3 Car. & Payne, 579; *Nation* v. *Tozer*, 1 Cr. Mees. & R. 172.

The words of the English statute are, the landlord may recover a reasonable *compensation* for the lands, &c., *held* or occupied. Under this statute, where the tenant acquires by the agreement the legal right to the possession, the premises may be said to be *held* by him within the terms of the statute, whether he continues to occupy or not, for the legal right to the occupation is in him and not in the landlord. But the Revised Statutes (1 R. S. 748, § 26) have made a material alteration in this phraseology. As the statute now stands, the landlord is to recover "a reasonable *satisfaction* for the *use* and occupation," and I am disposed to think that the construction put upon this amended phraseology by Justice Beardsley, in *Wood* v. *Wilcox* (1 Denio, 37), that there must be actual and continual occupation during the whole period for which the party is allowed to recover, is the correct one.

If this be so, then, the question in the case is, did the defendant actually occupy the house, and, if he did, how long did that occupation continue? The delivery and acceptance of the key of the house is sufficient to establish the fact of occupation. *Little* v. *Martin*, 3 Wend. 221; *Noble* v. *Smith*, 2 Johns. 56; Taylor's Land. & Tenant, ed. of 1844, p. 299. In addition to which, there was evidence showing that Ward entered and cleaned the house and sent a quantity of coal there. That was abundant evidence of the commencement of an occupation, and, as the commencement of an occupation was shown, it will be presumed to have continued in accordance with the agreement, until the contrary appears. It was shown that it was interrupted and put an end to, by Loyd's leasing the premises to another tenant. When he began to occupy, the occupation of the de-

fendant ceased, but up to that time the defendant was liable in the action and the plaintiff entitled to a reasonable satisfaction for the use and enjoyment of the premises by the defendant. It was agreed that it was worth a rent of $1,000 a year, and it appeared from the evidence that it was afterwards leased for that sum. There was nothing in the evidence to warrant the judge in finding that there was, as has been insisted upon on the appeal, a surrender and acceptance of the premises by the plaintiff. The judgment must be reversed.