## STEPHENS *vs.* SANTEE.

Under section 63 of the Code, which provides that "a justice of the peace, on the demand of a party in whose favor he *shall have rendered a judgment,* shall give a transcript thereof, which may be filed and docketed in the office of the clerk of the county where the judgment was rendered," and directs that the time of the receipt of the transcript by the clerk shall be entered thereon, and entered in the docket, and "from that time the judgment shall be a judgment of the county court," there can be no judgment in the county court, unless a judgment has in fact been rendered in the justices' court.

If there has been no judgment rendered by the justice, the filing and docketing of the transcript in the county clerk's office is a mere nullity. The question is essentially jurisdictional. If it is not a judgment in the court in which the action was commenced and tried, it cannot, in the nature of things, be such in the county court.

Although such transcript is *prima facie* evidence, not only that the judgment has been rendered by the justice, but that he had jurisdiction to render it, and when presented to the county clerk properly certified by the justice, is sufficient to authorize him to file it, and docket the judgment; and the judgment of the county court is sufficiently established, *prima facie,* by the production in evidence of a duly certified copy of the transcript, and docket; yet it may be shown that the transcript is entirely false, or a forgery, and that no such judgment was ever in fact rendered by the justice.

Merely entering the verdict of the jury, in his docket, by the justice, and putting down the items of costs and adding them up with the verdict, and thus ascertaining the sum total, without doing any thing further, is not rendering a judgment on such verdict. Judgment must be rendered, and entered in some way as a judicial act.

The statute provides that in all cases where a verdict shall be rendered, in a justices' court, " the justice shall forthwith render judgment, and enter the same in his docket." (2 *R. S.* 247, § 124.) The decision must be evidenced by some official act. A decision in the mind of the justice, unless it is entered in the docket, or in the minutes of the trial, is of no avail whatever. It is not a legal rendering of judgment, and will not constitute a judgment, in law.

Where, although it appeared from the transcript furnished by the justice for the county clerk, that judgment was rendered by the justice, and entered in his docket, on the day the verdict was rendered, and in his certificate the justice stated that the transcript was "a correct transcript from his docket" of a judgment on record in his office, and of the whole of said judgment; yet, it appearing from an examination of the justice's docket, on the trial. that there was no such entry therein as was stated in the transcript, and that none such had ever been made there; the justice testifying that he made the entries which appeared upon his docket, at the time the verdict was rendered, but was unable to state that he had made any entry of judgment,

Stephens *v.* Santee.

in his minutes, or anywhere; *Held*, that upon this evidence the referee was authorized to find, as matter of fact, that the justice never made any entry of judgment in any way, and never rendered judgment upon the verdict.

A judgment, in a justice's court, is not completed, so that it can be enforced by execution, until it is entered in the docket, even where it has first been entered in the minutes in due time.

It is not competent to prove, by parol, the entry of a judgment, not upon the minutes of the justice, nor upon his docket.

D. wanting work, applied to S. to furnish employment; whereupon it was agreed between them that D. should cut timber from his own land, and make it into railroad ties for S. and deliver the ties at twelve cents apiece; that S. should furnish money as the work progressed, and the ties were to be his property from the time the trees were cut from the stump. Under this contract the timber for the ties was all cut, and hauled upon the land of a third person, and was there verbally turned out to S. as his property, before being levied on as the property of D. *Held*, that the contract was not within the statute of frauds, but belonged to that other class of contracts where the vendor agrees to furnish materials and manufacture for, and deliver to, the vendee, certain goods at a future day. That in this case the labor was manifestly to be done for S. upon his employment, and the referee, therefore, rightfully held that the timber became the property of S. as soon as it was severed from the stump.

The true criterion, in all such cases, is whether the work and labor, required in order to prepare the subject matter of the contract for delivery, is to be done for the vendor himself, or for the vendee. If for the latter, it is simply a case of hiring, and not within the statute of frauds.

APPEAL by the plaintiff from a judgment of the county court of Steuben county, rendered on appeal from a judgment of a justice of the peace, and from an order denying a motion for a new trial.

The action was brought for the conversion of a quantity of railroad ties; the plaintiff claiming title to such ties by virtue of a purchase from one Isaac Allison, who had bid off the same at a sheriff's sale on an execution issued against the property of C. W. Daniels, who was claimed by the plaintiff to have been the owner of the ties at the time of such sheriff's sale, in the spring of 1862. The defendant, by his answer, denied the allegations of the complaint, and alleged that the ties were not the property of the plaintiff, but belonged to him, the defendant. The

justice rendered a judgment in favor of the defendant for costs, $4.50. The defendant appealed to the county court, and the action being upon the calendar of that court, for trial, the issues were referred to Harlo Hakes, Esq. to hear and determine.

On the trial before the referee, the appellant offered in evidence a transcript of a justice's judgment in an action brought by Isaac Allison against Charles W. Daniels, purporting to have been rendered on the 23d day of January, 1862, in favor of Allison, against Daniels, for a cause of action accruing on contract, for $183.25, damages and costs, with the certificate of the county clerk that such transcript was filed in his office on the 15th of February, 1862. The counsel for the defendant objected thereto as immaterial, unless the original entry in the justice's docket were introduced; which objection was overruled by the referee, and the counsel for the respondent excepted. The said transcript, certificate and indorsement were then read in evidence. The counsel for the plaintiff then offered in evidence a certified transcript of the docket of said judgment in the county clerk's office, to which the counsel for the defendant objected the same as above; which objection was overruled by the referee, and the counsel for the defendant excepted. The counsel for the plaintiff then read the said transcript and certificate thereto in evidence. Also an execution issued thereon, by the county clerk, and indorsements and certificates thereon, showing that the execution was satisfied. *L. P. Weed,* a witness sworn on the part of the defendant, testified as follows: "I was an acting justice of the peace in the town of Canisteo, in 1861 and 1862. This is my justice's docket. I issued a transcript on the third of February, 1862. No other cause was tried before me between the parties. The entries on page 112 contain all the entries ever made by me in my docket in that suit. I never issued but one transcript between the parties." The counsel for the defendant then offered in

evidence the proceedings and entries on page 112 of said docket. The counsel for the plaintiff objected on the ground that the same was incompetent and immaterial. The referee overruled the objection, to which decision and ruling the counsel for the plaintiff excepted. The proceedings were then read in evidence, and were in words and figures following:

"*Isaac Allison* v. *Charles W. Daniels.* 1861, Oct. 23, 1 P. M. Parties appeared pursuant to an order of the court, and answered to the suit. Robert Brundage, for plaintiff, J. D. Millard, for defendant. Issue joined in writing. Adjourned by consent until Nov. 7, at 1 P. M. Adjourned by consent of parties to the 15th ot November, at 1 P. M. at which time parties appeared and a commission granted to examine Frederick K. Swarts, of Harrisburg, Pa. Commission made out and directed to Richard Hummell and William Kern, Harrisburg, Pa. Suit further adjourned to January 23, 1862, at 1 P. M. at which time the suit was tried by jury. The following sworn as jurors, [giving their names.]

By consent of parties the jury retired without being *in charge of a constable, and brought in a verdict in* favor of the plaintiff and against the defendant, for damages, $175 00

| | |
|---|---|
| Justice's cost, . . . . . . . | 6 00 |
| Const. cost, . . . . . . . . | 1 25 |
| Plaintiff's cost, . . . . . . . | 1 00 |

$183 25

February 3, 1861, transcript given, . . 50

Received the costs in the above suit and notice of appeal, and $2 for return for plaintiff. L. P. WEED, J. P."

And the said witness then further testified as follows: "I kept minutes of the trial and proceedings and evidence. I have not got them with me. I cannot tell all I entered in the minutes. I cannot say whether I did or did not enter the judgment in the minutes. I think I made these entries in the docket at the time the verdict was brought

in." The counsel for the plaintiff then asked the witness the following question : "Did you make any other entry of judgment in this action except what you made on page 112 of this docket ?" To which question, and the answer thereto, the counsel for the defendant objected, on the ground that the entry, if any, would be the best evidence, and as immaterial. The referee sustained the objection ; to which decision the counsel for the plaintiff excepted.

The referee found and decided that Charles W. Daniels, in the years 1861 and 1862, was the owner, or in possession of, a piece of land, situate in the town of Canisteo, in the county of Steuben, upon which was growing a quantity of oak and hemlock timber, suitable for railroad ties. That Daniels entered into an agreement with the defendant, (not in writing,) to cut, manufacture and deliver to the defendant one thousand hemlock ties, for which he was to pay twelve cents apiece, and to pay the same as the work of getting them out progressed. The ties to be delivered on the side of the railroad track, in condition for loading on the cars. That Daniels cut, hewed and hauled out upon the lands of John Crosby, timber for about eight hundred ties previous to February, 1862, the trees were not cut up into ties, but some sticks were long enough to make five ties, and some of different lengths, and nine tenths were more than one tie in length ; that the ties were in this condition until after the 11th day of February, 1862, when they were cut up and piled on the bank of the railroad by Daniels. That on the fifth day of February, 1862, a transcript, in due form of law, was filed in the clerk's office, of Steuben county, and judgment duly docketed in the office of the said county court, in an action wherein Isaac Allison was plaintiff, and Charles W. Daniels was defendant, for the sum of $183.50, the judgment from which said transcript was issued was rendered by L. P. Weed, a justice of the peace, on the 23d day of January, 1862. That an execution, in due form of law, was issued

by the clerk of Steuben county to the sheriff thereof, and was levied upon the ties mentioned in the complaint by V. B. Wetmore, who was one of the deputies of the sheriff of Steuben county. That the said ties were sold by the said sheriff, and purchased by Isaac Allison, who within a few days, and before the time of commencement of this action, sold and transferred all the interest in the said ties to the plaintiff in this action. That when said levy was made, the timber lay upon the lands of the said John Crosby; some of the timber was long enough for five ties, and most of the pieces long enough for two ties and upwards. The said referee also found and decided, that the timber was transferred to the defendant and became his as soon as it was severed from the stump. To which decision the counsel for the plaintiff excepted. The referee also found and decided that the ties were delivered to the defendant on or before the 8th day of February, 1862, and that they then became his property. To which decision and ruling the counsel for the plaintiff excepted. The referee also found and decided that the proceedings and judgment in the action before L. P. Weed, were void. To which decision the counsel for the plaintiff excepted. And also that the transcript issued by the said justice was without any foundation, there being no valid judgment to sustain it. To which decision the counsel for the plaintiff excepted. The referee also found and decided that the judgment of the county court, upon which the execution was issued to the sheriff, and upon which the ties were sold, was void. To which decision and ruling the counsel for the plaintiff excepted. The referee also found and decided that the execution issued by the county clerk, by virtue of which the ties were levied upon by Deputy Sheriff Wetmore, was void. To which decision the counsel for the plaintiff excepted. The referee also found and decided that the sale of the said ties, and the purchase by the appellant, were void, and that the plaintiff was not

entitled to recover in the action. To each of which decisions the counsel for the plaintiff also excepted.

A motion was made in the Steuben county court, at the June term, for a new trial, upon a case and exceptions, when an order was duly made and entered by the said court denying said motion; from the decision denying said motion for a new trial, the appellant appealed to the Supreme Court.

*John W. Dininny*, for the appellant. I. The referee erred in holding and deciding that the judgment of the justice was void. The statute provides and declares what entries shall be made by the justice in his docket. (3 *R. S. 5th ed.* 456.) He is not required to follow any particular form, and if he enter the verdict and the costs, that is sufficient. The verdict and costs make up the judgment. The amount of each were entered in the justice's docket, and were added together, making the judgment. This was all that was necessary to determine completely the rights of the parties. If the justice erred in the items of costs, or in any other manner, the defendant in that action had the right of appeal to correct such error, but the respondent cannot take advantage of it in this collateral way. The justice had jurisdiction of the parties and of the subject of the action, and a judgment (though perhaps informal) was entered. This was sufficient. The statute prescribing the entries in the docket are directory only. (*Humphrey* v. *Persons*, 23 *Barb*. 313–318. *Hall* v. *Tuttle*, 6 *Hill*, 38.) Statutes directing the mode of proceedings by public officers are directory only, and are not regarded as essential to the validity of the proceedings themselves, unless it be so declared by statute. (*Holland* v. *Osgood*, 8 *Verm. Rep*. 280. *The People* v. *Cook*, 14 *Barb*. 291.) It was not necessary that the judgment should be entered in his docket. An entry in his minutes was sufficient.

II. The referee erred in excluding the answer to the following question : "Did you make any other entry of judgment in this action except what you made on page 112 of this docket?" (*Hall* v. *Tuttle*, 6 *Hill*, 38. *Walrod* v. *Shuler*, 2 *Comst.* 134.)

III. The referee erred in allowing the respondent to prove and introduce in evidence the docket of the justice. The transcript of the judgment had been filed, and the judgment had become a judgment of the county court, and was conclusive. The Code declares that the time of the receipt of the transcript by the clerk shall be noted thereon and entered in the docket, and from that time the judgment shall be a judgment of the county court. (§ 63.) The transcript takes the place of the judgment roll. (*Jackson* v. *Tuttle*, 9 *Cowen*, 233–8. *Jackson* v. *Witherell, Id.* 182. *Dickinson* v. *Smith*, 25 *Barb.* 102. *Lyon* v. *Manly*, 18 *How.* 267.) An action cannot be brought upon such judgment without leave of court. (*Lyon* v. *Manly*, 32 *Barb.* 51.) If the justice had no jurisdiction, the defendant should have moved to set the judgment aside, or appealed from the judgment, and have reversed it. No question was made before the referee that the justice had no jurisdiction of the parties or the subject matter ; the only objection was, that he had omitted to make the proper entries in the docket.

IV. The title to the ties never passed to Santee. The agreement was void, not being in writing. It was an agreement for the sale of timber, which was, at the time, annexed to the freehold. Santee did not and could not obtain any title to the ties by the talk he had with Daniels on his way to Bath. If it was an agreement to manufacture the ties out of his own timber, and deliver them finished, at a given place, the title would not pass until completely delivered. (*Andrews* v. *Durant*, 11 *N. Y. Rep.* 35. *Comfort* v. *Kiersted*, 26 *Barb.* 472.) These ties were never delivered. What was done on the 8th of February

was of no avail. Santee insisted on railroad inspection, and having them cut up and delivered on the railroad. He did not then accept them as completed. The culls were not designated. The ties were not finished, or deposited where they were to be left. On a sale of goods, so long as any act remains to be done by the seller, the property does not vest in the buyer. (*McDonald* v. *Hewett*, 15 *John.* 349. 19 *Barb.* 461, *and the cases there cited.*) Although there has been a delivery of the property, yet where any thing remains to be done, the seller does not lose his lien, nor part with his title thereto. (*Calkins* v. *Wheaton*, 2 *N. Y. Legal Obs.* 425. *Joyce* v. *Adams*, 4 *Seld.* 291.) The proof shows conclusively that there had been no delivery, and none was understood to be by the parties.

V. Santee waived his right to hold the ties against this execution, and he is now estopped from claiming them. (*Dennison* v. *Ely*, 1 *Barb.* 610. *Tilton* v. *Nelson*, 27 *id.* 595. *Dezell* v. *Odell*, 3 *Hill*, 215.)

*W. B. Jones,* for the respondent. I. The ties in question were never the property of Daniels after they were severed, and the referee has so found as a question of fact. The contract under which the ties were got out by Daniels, testified to by Daniels and by Santee, the only witnesses to the agreement, required that finding by the referee. The agreement was valid, and the provision by Santee that they were to be his as soon as cut, was one the parties were entirely competent to make. The ties were the product of property which Daniels had, and, therefore, potentially his, and subject to sale on such terms as he saw fit, there being no fraudulent intent. (*Van Hoozer* v. *Cory*, 34 *Barb.* 10. *Otis* v. *Sill*, 8 *id.* 111. *Conderman* v. *Smith*, 41 *id.* 404.).

II. But a delivery of the ties took place before the levy, as is shown by the testimony of Santee, all of which is

Stephens *v.* Santee.

found as a fact by the referee. (*Stanton* v. *Small*, 3 *Sandf.* 230. 19 *N. Y. Rep.* 330.)

III. The appellant claims an agreement, by the respondent, that Allison might "go on and get his debt, and he would not stand in his way." This is denied by the respondent, and having been passed upon by the referee, his finding cannot be disturbed. Even if such conversation had been had, no right was acquired under it that was not revoked by forbidding the sale.

IV. There was no valid judgment in Allison against Daniels, rendered by Justice Weed, and hence the transcript and execution, and sale, were without any thing to support them, and could not be the basis of a title to these ties in the appellant. All the proceedings had in that action show that Justice Weed did not forthwith, and never did, render any judgment in the action, or enter any on his docket or minutes. (3 *R. S. 5th ed.* 445. *Sibley* v. *Howard*, 3 *Denio*, 72. 19 *Wend.* 371. 5 *Hill*, 60.) The finding of the referee upon that subject is clearly right.

*By the Court*, JOHNSON, J. The referee found, from the evidence before him, that the judgment of the county court, upon which the execution was issued and the property in question sold, to the vendee of the appellant, was void, inasmuch as no judgment had ever been rendered in the justice's court.

This presents a new question, of considerable importance, and deserves careful consideration. The Code (§ 63) provides that, "a justice of the peace, on the demand of a party in whose favor he *shall have rendered a judgment*, shall give a transcript thereof, which may be filed and docketed in the office of the clerk of the county where the judgment was rendered." The section further provides that the time of the receipt of the transcript by the clerk shall be entered thereon, and entered in the docket, "and from that time the judgment shall be a judgment of the county court."

But it is quite certain that in such a case there can be no judgment in the county court, unless a judgment has in fact been rendered in the justices' court. If there has been no judgment rendered by the justice, the filing and docketing of the transcript in the county clerk's office is a mere nullity. The question is essentially jurisdictional. If it is not a judgment in the court in which the action was commenced and tried, it cannot, in the nature of things, be such in the county court. The appellant, on the trial before the referee, objected to the introduction of evidence to prove that no judgment had been rendered by the justice who furnished the transcript, insisting, as his counsel does here, that the judgment is a judgment of the county court, and is conclusive, and can neither be disputed nor contradicted. But unless the law has made it a judgment, it was not a judgment, and in all cases a party is at liberty to show want of jurisdiction in relation to the subject matter, or the legality of the organization of the court, in order to defeat a judgment. (*Oakley* v. *Aspinwall*, 3 *Comst.* 547. *Noyes* v. *Butler*, 6 *Barb.* 613. 2 *Wait's Law and Practice*, 15.) And by parity, in a case like this, it may be shown that the transcript is entirely false or a forgery, and that no such judgment was ever in fact rendered by the justice. That was what the respondent sought to do here. The transcript is *prima facie* evidence, not only that the judgment has been rendered by the justice, but that he had jurisdiction to render it, and when presented to the county clerk, properly certified by the justice, is sufficient to authorize him to file it, and docket the judgment. And the judgment of the county court is sufficiently established, *prima facie*, by the production in evidence of a duly certified copy of the transcript and docket by the county clerk. (*Dickinson* v. *Smith*, (25 *Barb.* 102.) The action was tried before the justice by a jury, who rendered a verdict in favor of the plaintiff, which the justice duly entered upon his docket on the same day, and as the presumption

Stephens *v.* Santee.

is, immediately after it was rendered. But it does not appear from the docket, that any thing further was done by the justice, except to put down the several items of costs and add them up with the verdict. No judgment was rendered, as appears by the docket, at all. Merely entering the verdict in the docket, and putting down the items of costs and adding them up with the verdict, and thus ascertaining the sum total, and nothing more, is not rendering a judgment on such verdict. Judgment must be rendered, and entered in some way as a judicial act. The statute, (2 *R. S.* 247, § 124,) provides that in all cases where a verdict shall be rendered in a justices' court "the justice shall forthwith render judgment and enter the same in his docket." The decision must be evidenced by some official act. A decision in the mind of the justice, unless it is entered in the docket, or in the minutes of the trial, is of no avail whatever. It is not a legal rendering of judgment, and will not constitute a judgment in law. (2 *Wait's Law and Prac.* 694. *Seaman* v. *Ward,* 1 *Hilt.* 52.)

In the transcript which the justice furnished for the county clerk, it appeared that judgment was rendered, and entered in the docket of the justice, on the day the verdict was rendered. And in his certificate he set forth that the transcript was "a correct transcript from his docket" of a judgment on record in his office, and of the whole of said judgment. On the trial, the justice was examined as a witness, and produced his docket, and it appeared that there was no such entry upon his docket as appeared in the transcript certified to by him, and that none such had ever been made there. The justice, on his examination, testified that he made the entries which appeared upon his docket at the time the verdict was rendered, but was unable to state that he had made any entry of judgment in his minutes, or anywhere. The verdict was rendered and entered in the docket the 23d of January, 1862, and the transcript given on the 3d of February thereafter. Upon this evi-

dence, I think, the referee was authorized to find, as matter of fact, that the justice never made any entry of judgment in any way; and never rendered judgment upon the verdict. The presumption is that he did so find as matter of fact. It is incontrovertible that none was ever entered, at any time, upon the docket. If no judgment was rendered by the justice, there was, of course, no foundation on which the judgment of the county court could stand, and it was no judgment. It has been held that if the justice enter the judgment in his minutes of the trial, in due time, it is a sufficient rendering of the judgment, although it is not transferred to the docket until after the time for entering it in the docket, prescribed by statute, has elapsed. (*Walrod* v. *Shuler*, 2 *Comst.* 134. *Hall* v. *Tuttle*, 6 *Hill*, 38.) But those decisions do not affect the question here. In this case no entry has been made, and there is no case holding that a judgment can be rendered, so as to become a valid judgment in law, unless it is entered either in the minutes of the justice, or in his docket at the prescribed time for rendering judgment. I am of the opinion that the judgment is not completed, so that it can be enforced by execution, until it is entered in the docket, even where it has first been entered in the minutes in due time. (2 *Wait's Law and Prac.* 696.)

The appellant's counsel excepted to the ruling of the referee, excluding the answer to the question put to the justice, by him, as to whether he made any other entry of judgment in the action, except that which he made on page 112 of his docket. The objection to the answer was that if he made any other entry, the entry itself would be the best evidence. The question obviously did not refer to the justice's minutes, as the justice had been examined fully in regard to the entries made therein. If it referred to some other place in the docket, the docket was present, and the entry would show for itself, and furnish the best evidence; and in any case, I apprehend, it is not competent

to prove by parol, the entry of a judgment, not upon the minutes of the justice, nor upon his docket. The decision of the referee, as the case stood before him, was, I think, correct. This is enough to dispose of the case, as the appellant clearly had no title, except what was derived from the sale under the void judgment and execution.

But even if the judgment was not void, I am of the opinion that the referee was right in holding that the property was the property of the respondent at the time the levy was made.

The contract, according to the finding of the referee, and according to the evidence in behalf of the respondent, was not within the statute of frauds, but belonged to that other class of contracts where the vendor agrees to furnish materials and manufacture for, and deliver to the vendee, at a future day. It appears from the evidence that Daniels, the judgment debtor and respondent's vendor, wanted work for the winter, and applied to the respondent to furnish employment; and it was agreed between them that Daniels should cut timber and make it into railroad ties from his own land, or land in his possession, for the respondent, and deliver the ties at twelve cents apiece; that the respondent should furnish money as the work progressed, and the ties were to be the property of the respondent as soon as the trees were cut from the stump. The timber for the ties had all been cut and hauled upon the land of a third person, and there verbally turned out to the respondent as his property, before the levy. There was some conflicting evidence, but the finding of the referee is conclusive as to the facts, upon this question. The true criterion in all such cases is, whether the work and labor required in order to prepare the subject matter of the contract for delivery, is to be done for the vendor himself, or for the vendee. If for the latter it is simply a case of hiring, and not within the statute. (*Parker* v.

---

*Schenck,* 28 *Barb.* 38. *Donovan* v. *Willson,* 26 *id.* 138. *Bronson* v. *Wiman,* 10 *id.* 406.   *S. C.* 4 *Seld.* 182.)   Here the labor was manifestly for the respondent, upon his employment.   The verbal delivery or turning out was of no consequence.   But by the agreement the timber was to belong to the respondent the moment it was severed from the stump, and the vendor was to work it up into ties for the vendee, as his employer.   The referee, therefore, rightfully held that the timber became the property of the vendee, as soon as it was severed from the stump.   The judgment should be affirmed.

[MONROE GENERAL TERM, September 7, 1868.   *E. D. Smith, Johnson* and *J. C. Smith,* Justices.]