WILLIAM W. COOKE et al., Appellants, *v.* WALTER MILLARD et al., Respondents.

(GENERAL TERM, THIRD DEPARTMENT, NOVEMBER, 1871.)

Defendants verbally ordered, at a price exceeding fifty dollars, from the yard of plaintiffs, who were lumber dealers, and also had a planing mill, at which they dressed and cut lumber for sale, certain lumber, to be dressed and cut from lots examined by defendants according to certain directions given by defendants, and directed plaintiffs, when said lumber was ready for delivery, to place it on plaintiffs' dock, and to notify one P., a forwarder, who would send a boat for it. The lumber was accordingly prepared as directed and placed on plaintiffs' dock, measured and ready for delivery, and P. notified of its being there and requested to send a boat and take it away. No instructions had been given to P. by defendants or otherwise in regard to it. The next day, which was Sunday, the lumber yet remaining on the dock was consumed by fire with other property. No part of the price was ever paid. A memorandum of the order was made by plaintiffs, but was not signed by defendants or in their behalf.

*Held,* That the contract was one for sale of goods, and not a mixed one of sale and for labor to be performed.

That there was no sufficient receipt and acceptance of the goods by defendants to take the case out of the operation of the statute of frauds.

That the contract was, therefore, one within the statute and void, and that plaintiffs could not recover the price of the lumber.

APPEAL from judgment entered in favor of defendant upon the report of a referee. The facts appear in the opinion.

*Martin W. Cooke,* for appellants.

*John Thompson,* for respondents.

Present—MILLER, P. J., DANIELS and PARKER, JJ.

PARKER, J. This is an appeal from a judgment entered in favor of defendants, on the report of a referee.

The action is to recover the price of a quantity of lumber, alleged in the complaint to have been sold and delivered by plaintiffs to the defendants.

The defence is a denial of the complaint. The facts, as

found by the referee, to whom the case was referred, are, in substance, that defendants, who are lumber dealers, and reside at New Hamburgh, on the Hudson, being, on the 5th day of September, 1865, at Whitehall, N. Y., where plaintiffs, who are also lumber dealers, reside, and desiring to purchase certain kinds of lumber, were shown by the plaintiffs the lumber then in their yard. This lumber was of the quality which the defendants desired to purchase, but needed to be dressed and cut into the different sizes which they wished; and there was much more lumber in the yard shown the defendants than was requisite to make that which they desired to procure. The defendants thereupon gave to the plaintiffs a *verbal* order for *certain quantities and sizes* of _umber at certain prices, verbally agreed upon, which, in the whole, amounted to $918.22.

A memorandum of the order, as agreed to, was made by the plaintiffs, but was not signed by the defendants, or by any one in their behalf. No particular lumber was selected or set apart to fill the order, nor was any part of it then in condition to be accepted or delivered.

The defendants told the plaintiffs that one Percival, a forwarder at Whitehall, would send a boat to take the lumber, when notified that it was ready to be delivered.

Subsequently, and on the fifteenth of September, the lumber having been prepared and dressed according to the arrangement before stated, was piled upon the dock of the plaintiffs, and was in all respects ready for delivery by plaintiffs, according to the verbal agreement between them and the defendants.

The plaintiffs, on the same day, gave notice to Percival that the lumber was ready for delivery, and requested him to send a boat and take it away.

Percival had not, in fact, been notified by defendants, or otherwise, of the arrangement that he was to ship the lumber, and paid no attention to the notice given him by plaintiffs.

The next day, which was Sunday, the lumber, yet remain-

ing on the dock, was consumed by fire, with the planing mill and much other property. No part of the price was ever paid.

The lumber ordered, as aforesaid, was to be taken from the lots examined by defendants, and the lumber dressed and piled on plaintiffs' dock was, in fact, all taken from said lumber shown and looked at, as aforesaid.

After said verbal order or bargain, said defendants went into the lumber yard with plaintiffs' foreman, and pointed out to him some of the piles from which they desired said lumber should be manufactured. Also, after said verbal bargain or order, the defendants directed plaintiffs to put the lumber so bargained for, as aforesaid, when it was ready, on their, plaintiffs', dock, and to notify said Percival when this was done, and told them that, when this was done, said Percival, who was also a lumber dealer, would take up a boat and ship said lumber, and make out the load from his yard. Upon these facts the referee decided, as matters of law, that the contract was void in law, and that judgment should be rendered for the defendants.

To the said conclusions of law, and each of them, the plaintiffs duly excepted.

The plaintiffs' counsel insists that the conclusion of the referee, that the contract was void by the statute of frauds, was erroneous, upon two grounds:

1st. That the contract was a mixed one, for the sale of goods and for work, and, therefore, not within the statute; and,

2d. That there was a sufficient acceptance and receipt of the lumber by defendants to take the case out of the operation of the statute.

As was said by the court, in *Courtright* v. *Stewart* (19 Barb., 456), "it is not easy to prescribe a test by which to determine, in every case, whether a contract is for the sale of goods, and, therefore, within the statute of frauds, or for work, labor and materials, and so not within the statute." The most accurate criterion was stated, in that case, to be, to

inquire " whether the work and labor required, in order to prepare the subject-matter of the contract for delivery, is to be done for the vendor himself, or for the vendee. In the former case the contract is really a contract of sale, while in the latter it is a contract of hiring," and this is repeated in *Stephens* v. *Santee* (51 Barb., 545).

This test, it seems to me, is manifestly a correct one when it is practicable to apply it, for very clearly if the work and labor is done for the vendor, then the contract is not one of hiring by the vendee, and the case is not thus taken out of the statute.

In the case at bar the contract was, I think, one of sale, and not one of hiring. The plaintiffs were lumber dealers, and also had a planing mill, where they dressed and cut lumber into different sizes for sale. Defendants, as the plaintiff W. H. Cooke stated in his testimony, " wanted to *buy* some *dressed lumber*," and were shown by the plaintiffs through their yard, where they had lumber of the quality but not of the sizes, nor dressed, as defendants wanted it. " Part of it was surfaced," as the witness Cooke said, " and part of it in the rough." The kind, it seems, which defendants wanted were dressed clapboards, matched ceiling, and surfaced pine. These are all such lumber as is kept by dealers for sale, and plaintiffs, as Cooke testified, "had previously sold defendants the same kind of lumber," and when plaintiffs took defendants' order and agreed to furnish them such lumber it was in substance as well as in form only an agreement to sell them the lumber specified at certain prices. The work to be done upon the lumber was not work which defendants had hired plaintiffs to do for them, but it was manifestly work which plaintiffs were to do for themselves, in putting their lumber in condition for sale to defendants. Defendants did not hire plaintiffs to slit and plane the lumber. They agreed for the lumber in such condition, and though it was to be lumber from certain piles in plaintiffs' yard, yet it was no less a purchasing of lumber, and not a hiring of plaintiffs to manufacture it. There is a marked distinction between such a trans

action and an agreement for the manufacture of an article. This was not a manufacturing of lumber. That existed *in solido*, and what was to be done was to put it in marketable condition. It was "part of it in the rough," and this was to be planed and matched. It was not of the desired size, and it was to be slit. It was in this respect like the unthreshed wheat, a sale of which by parol, with the agreement that it should be threshed by the vendor, was held. to be within the statute. (*Downs* v. *Ross*, 23 Wend., 270.) The doctrine stated in that case is, that "if the thing sold exist *in solido*, the mere fact that something remains to be done to put it in a marketable condition will not take the contract out of the operation of the statute.

This construction of the contract in question does not conflict with the case of *Sewall* v. *Fitch* (8 Cow., 215), which is regarded as a leading case, for there the nails contracted for were *not in existence*. They had to be *made*. And so in the other cases cited by plaintiffs' counsel, as in *Groves* v. *Bucks* (3 Maule & Selw., 78) the oak pins were not yet made. In *Mead* v. *Case* (33 Barb., 202), the monument sold at the time of the sale had as such no existence. In *Stephens* v. *Santee* (51 Barb., 532), the contract was specifically for work and labor to be performed by the plaintiff for the defendant, and it was true also that the railroad ties to be furnished had at the time of the verbal agreement no existence. They were to be made. And so in *Webster* v. *Zieilly* (52 Barb., 482), the subject-matter of the contract was one of employment by the defendant of the plaintiff, in the language of the court, "to take the job and incur the expense of purchasing hop roots for defendant, with a fixed compensation," and on this ground it was held that the contract was not within the statute.

The transaction in question in the case at bar was a sale of lumber, and not a contract of hiring, and being by parol, and no part of the price being paid, was, unless there was a sufficient acceptance and receipt by defendants, within the statute.

The next inquiry is, was there a sufficient acceptance and

receipt of the lumber by the defendants to answer the require
ment of the statute.   The statute makes "every contract for
the sale of any goods for the price of fifty dollars or more
void unless the buyer shall *accept* and *receive* part of such
goods." (2 R. S., 136, § 3, 1 ed.)   It is very clear, I think,
that here has been no such acceptance and receipt of the
lumber as the statute requires. ·

The position of appellants' counsel is, that the placing of
the lumber when ready for delivery on the dock and notifying
Percival to come and take it away, in pursuance of the direc-
tion of the defendants, amounted to such acceptance and
receipt of it as satisfied the statute.

Even if this was such a delivery as would have transferred
the property to the purchaser under the common-law rule, it
cannot be said to be an *acceptance* of it by the defendants.
Nor can this, with what the defendants had done prior to the
act of piling, measuring, and notifying Percival, be deemed,
as plaintiff's counsel claims it was, an acceptance of the lum-
ber by defendants, as a fulfilment by plaintiffs of the contract.

In this case, there could have been no acceptance by
defendants before the lumber was prepared for delivery.   It
was not before that, as the referee finds, " in a condition to
be delivered or accepted."   The defendants had not by them-'
selves, or their agent, done any act in respect to it, and with-
out some act amounting to an acceptance there could be
none.   In *Rodgers* v. *Phillips* (40 N. Y. R., 519), the defend-
ants in New York gave verbal orders for 175 or 200 tons of
coal, and directed that it be delivered " on board at Rich-
mond, near Philadelphia, in the customary manner."   No
particular barge or boat was designated.   The coal was
delivered by plaintiff on board a coal barge at Richmond,
and a bill of lading taken by which it was to be transported
to New York, and delivered to defendants there, pursuant to
defendants' directions.   And yet this was held no acceptance
under the statute of frauds.   The court say : "Up to the
time when the coal was lost by the sinking of the vessel
having it on board, *no act was performed by the defendants*

from which it could be colorably claimed that they had accepted the coal, or become invested with the title to it." It was assumed by the court in that case, that there was a sufficient delivery to vest the title, at common law, but it was held that something more was necessary to answer the requirement of the statute of frauds, as is implied in what is above quoted, the performance of *some act* of express or implied acceptance.

The rule stated by Story in his Treatise on Sales, to the effect that " there must be not only such an actual delivery by the seller as to destroy all further claim of lien, or stoppage *in transitu* on his part, but also such an actual *acceptance* by the buyer as to disable him from objecting to the quantity or quality of the goods," was approved by the court in the following words :

" This broad and explicit exposition of the acceptance necessary to give validity to the contract, and stand in place of a writing, is founded upon numerous English cases on the construction of the statute in England, from which ours is copied," citing a number of English cases. (See *Rodgers* v. *Phillips*, *supra*, pp. 530 and 531.)

Although it may be said, perhaps that the rule from Story was not adopted in its full extent in that case, yet it is stated therein, that the rule is unquestioned that to take a case out of the statute, there must be something more than such a delivery as would change the title, and place the goods at the risk of the buyer, if the contract was in writing.

In *Shindler* v. *Houston* (1 Coms., 269), the court, in effect, adopt the rule above stated from Story.  Judge WRIGHT says : " The best considered cases hold that there must be a vesting of the possession of the goods in the vendee, as absolute owner, discharged of all lien for the price on the part of the vendor, and an ultimate acceptance and receiving of the property by the vendee, so unequivocal that he shall have precluded himself from taking any objection to the quantum or quality of the goods sold."   And again : " I think I may affirm with safety, that the doctrine is now clearly settled,

that there must be not only a delivery by the seller, but an ultimate acceptance of the possession of the goods by the buyer, and that this delivery and acceptance can only be evinced by unequivocal acts independent of the proof of the contract." Judge GARDINER, in the same case, after referring to *Philips* v. *Bistolli* (2 B. & C., 511), in which the court says that, "to satisfy the statute there must be a delivery by the vendor, with the intention of vesting the right of possession in the vendee, and there must be an *actual acceptance* by the latter with the intent of taking possession as owner," says: "This I apprehend is the correct rule, and it is obvious that it can only be satisfied by something done, subsequent to the sale, unequivocally indicating the mutual intentions of the parties."

In the case at bar, it cannot be pretended that anything was done by the parties coming up to this requirement.

The result of the views above expressed is that the judgment is right, and must be affirmed with costs.

Judgment affirmed.