## Orman v. Hager.

### Filed January 20, 1886.

1. **Sale of Goods—Statute of Frauds—Manufactured for Special Purpose.**
    Plaintiff agreed to cut, saw, and deliver to defendant, a railroad contractor, along the line of the railroad, certain lumber of special sizes and kinds, used in the construction of narrow gauge railroads, which are not usually kept and sold by lumber merchants. The lumber was to be made from timber on government land, and defendant was to secure permission to use it. *Held*, that this was a contract for work and labor, and not a sale of goods, within the statute of frauds.

2. **Breach of Contract—Damages—Expenses Incurred.**
    Expenses incurred by plaintiff in moving his machinery and force of men to the vicinity of the timber, and while awaiting orders from the defendant, are properly an element of damages for the breach of such a contract.

3. **Same—Novation.**
    Upon breach of such a contract by defendant, plaintiff entered into a less advantageous contract directly with the railroad company to furnish a much smaller quantity of lumber, requiring less machinery and fewer men than had been prepared and collected for operations under the contract with defendant. *Held*, such new arrangement cannot be considered a novation of the contract on which action was brought.

Error to district court, Santa Fe county.

*P. L. Vanderveer* and *John H. Knaebel*, for plaintiff in error.

*Fiske & Warren*, for defendant in error.

Brinker, J. This is an action of *assumpsit* commenced in the court below to recover of defendant $1,050. The declaration alleges that on August 23, 1882, plaintiff and defendant entered into an agreement, whereby plaintiff agreed to cut, saw, and deliver to defendant, upon the line of the Texas, Santa Fe & Northern Railroad, in Santa Fe and Rio Arriba counties, 1,000,000 feet of sawed rail-

road lumber of sizes suitable for use on said railroad, the contract to be completed on or before December 1, 1882; that defendant agreed to accept and receive from the plaintiff all of said lumber as fast as the same could be delivered to him, and to pay therefor $19.50 per thousand feet, payable on the twentieth day of each month, except 15 per cent. of the amount, which was to be retained by defendant until the completion of the contract, when it should also be paid. That on said day plaintiff entered upon the performance of said contract, and commenced work thereunder by procuring saw-mills and all necessary labor for carrying out the same, and furnished to defendant ———— feet of lumber, as required by said contract, and has always been ready and willing to complete said contract, of which defendant had notice, but that defendant, contriving to injure the plaintiff, did not nor would not perform his part of the agreement, but discharged the plaintiff, whereby plaintiff has lost the profits he would have derived from a completion of the work; that plaintiff was put to great expense in transporting, moving and erecting and taking away a saw-mill to and from the place selected by defendant for the sawing of said lumber, and in wages paid and board furnished divers persons, teams, and wagons employed in and about the cutting and sawing of said lumber, of which defendant had due notice, to plaintiff's damage in the sum of $1,050, and concluded with the common counts. Plaintiff filed a bill of particulars of the items of his demand, among which was the following: Expenses from August 10 to August 22, 1882, waiting orders from Orman to set in canon near San Ildefonso, $438. The plea was the general issue. There was a trial before the court, without the intervention of a jury.

Plaintiff appeared as a witness in his own behalf, and testified as follows:

"On or about July 23, 1882, at the request of the defendant, Orman, who then had a contract with the T., S. F. & N. R. R. Co. to build its road from Santa Fe, N. M., to Espanola, N. M., I made a bid by which I agreed to cut and deliver to him on the line of said road 1,000,000 feet of lumber of the special kinds used in the building of narrow-gauge railroads, said lumber to be all delivered before the first day of November, 1882, and for the price of $19.50 for each thousand feet of lumber so delivered. As soon as I had made that bid, defendant, Orman, and I had a talk together as to my ability to manufacture and deliver the lumber as agreed upon, in which talk defendant agreed to furnish me with a permit to cut said lumber on government land near said road, and I then told him I had two portable saw-mills on sets near Glorieta, N. M., and that with both of them I could supply the lumber according to my bid. Thereafter, within an hour, defendant accepted my bid verbally, and concluded the contract, and I immediately started to Glorieta, where I had my saw-mills in use, and upon reaching there immediately started one of my saw-mills towards the timber tract near the line of said railroad company, and a few days after the first mill was so started I started the other and second mill for the same place. I set my first mill in this timber in Santa Clara canon, near said railroad line, and commenced sawing lumber on my contract with said defendant about the fourth or fifth of August, 1882. I had sawed on that contract about 45,000 feet of lumber with my first saw-

mill; and the second mill, the moving of which was in charge of a man by the name of Watkins, had arrived at and was then in the same timber, and near my first mill at a place called 'San Ildefonso Canon,' and was ready to set and go to work, when defendant came out to my mill in the Santa Clara canon, and informed me that he had turned over the lumber part of his contract with said railroad to said railroad company, and therefore would not accept or receive from me any lumber on my contract with him. I then applied direct to said railroad company for a contract for furnishing such lumber to it, and obtained a contract with it, but the only contract the company would give me was to furnish said company with two hundred thousand feet of lumber per month, which I could and did furnish with one saw-mill,—my first mill. The second mill was a necessity to enable me to furnish the lumber in the time and quantities specified in my contract with Mr. Orman, but was wholly useless and unnecessary to furnish the 200,000 feet per month necessary to be furnished under my contract with the railroad company. When said Orman notified me of his refusal to carry out his contract with me as aforesaid, I protested against his action, and shortly afterwards I saw him again, and told him of the best I could do in the way of a contract with the railroad, and requested him to pay the expenses of moving my second mill from and back to Glorieta, and he then agreed to do so, and, we being then at Espanola, he agreed to come over the next day to see me at the place where my first mill was, and go with me to San Ildefonso canon, where my second mill was in charge of Watkins, and make arrangements to have the second mill taken back to Glorieta at his expense, where alone it was then useful to me. I waited four or five days at my first mill for defendant to come, as he had agreed to, and as he did not come then, I got anxious about the matter, and went over to Espanola to find him and see what was the matter. When I reached that place I found that defendant had gone to the state of Colorado without leaving any word for me. I then immediately went to San Ildefonso canon, and told Watkins what had taken place, and made arrangements with him to take the second mill back to the place from which I had brought it, Glorieta. The actual expense of moving this second mill from Glorieta to San Ildefonso canon and back to Glorieta, to which it was taken, was $1,050, which I paid. This amount was the actual amount the said moving cost. Such expense was wholly incurred for the purpose of enabling me to carry out my contract with defendant, as above stated. This second mill was of no use to me whatever away from Glorieta at the time mentioned. None of the lumber agreed to be furnished by me under the contract with Orman, as aforesaid, was manufactured at the date of that contract, but it was all to be manufactured thereafter, and none of such lumber was the class of lumber dealt in by lumber merchants, but it was all of the special kind and class needed and used in the building of narrow-gauge railroads."

This was all the testimony offered in the cause, except a written contract between plaintiff and the railroad company, which appears in the record, but whether it was offered in evidence, and if so, by whom, we are unable to say, as the record is silent concerning it.

Upon the conclusion of the testimony the defendant moved the court to dismiss the cause, for the reasons that the contract on which the action was brought was void under the statute of frauds; that all evidence introduced by plaintiff was illegal, improper, and irrelevant. This motion was overruled, and defendant excepted. There was a finding and judgment for plaintiff in the sum of $1,050. In due time defendant filed a motion for a new trial, covering sub-

stantially the same ground as the motion mentioned above. This motion was also overruled.

Defendant brings the case here on writ of error, and asks this court to reverse the judgment below, for the following reasons : The court held the agreement to be without the statute of frauds. The court found the agreement not to have been abandoned or merged in the subsequent contract with the railroad company. The court held the defendant liable for expenses in' removing the mill, and in keeping men and teams in waiting for orders. The court refused to grant a new trial. The court awarded excessive damages. The court disregarded the variance between the pleadings and proof. It found damages for plaintiff which were not proven.

There are but three questions seriously pressed upon our attention here.

The *first* is that there was a novation of the contract sued on, created by the contract subsequently entered into between the plaintiff and the railroad company. In disposing of this, it is sufficient to say that the position is not supported by the pleadings or proof. Wood, Fraud, § 158.

The *second* is that the contract sued on is within the seventeenth section of 29 Car. II., known as the statute of frauds. This is the main subject of controversy between the parties, and deserves careful consideration. Section seventeen provides that no contract for the sale of goods, etc., for the price of £10 or upwards shall be good, unless some part of the goods is delivered, or something paid to bind the bargain, or in part payment, or some note or memorandum of the contract made and signed by the party to be charged or his agent. Defendant says that this statute is in force in this territory as a part of the common law, and that the contract is void. On the other hand plaintiff insists that the statute is not in force in this territory; but if it is, this contract does not fall within its terms.

Without deciding whether the statute of frauds was adopted by the act of 1876, we will determine whether this contract is such an one as is by it condemned. To do this properly we must see whether this is a contract for the sale of goods, or one for work and labor. This question has never been passed upon by this court, and we are therefore without binding authority, but must seek such light as the adjudicated cases elsewhere furnish.

In England the rule deducible from the old authorities was that the statute applied to contracts for the actual sale of goods where the buyer is immediately liable, without time being given him by special agreement, and the seller to deliver the goods at once. *Towers* v. *Osborne*, 1 Str. 506; *Clayton* v. *Andrews*, 4 Burr. 2101; *Groves* v. *Buck*, 3 Maule & S. 178.

In *Groves* v. *Buck* the defendant agreed to purchase a quantity of oak pins not then in existence, but which were to be cut by plaintiff out of slabs then owned by him, and to be delivered at a future time.

There was a judgment for plaintiff, and affirmed in the king's bench. Lord ELLENBOROUGH, in deciding the case, said:

"The subject-matter of this contract did not exist *in rerum natura.* It was incapable of delivery and of part acceptance; and where that is the case, the contract has been considered as not within the statute."

The later English cases have altered this rule, and, in effect, if not directly, overruled the cases cited above; and, after varying opinions, fluctuating between the doctrine of *Towers* v. *Osborne* on one side and cases holding the other extreme, have settled upon a line of decision, which Mr. Wood has epitomized in the following language:

"If the subject-matter of the contract is such that it will result in the sale of a chattel to be afterwards delivered, then the action must be for goods sold and delivered. If, however, the subject-matter of the contract is such that when completed it will not result in anything which can properly be said to be the subject of a sale, then the action must be for work and labor done and materials furnished." Wood, Frauds, § 296.

In this country there is great conflict of opinion. To endeavor to reconcile the decisions, or extract from them a uniform rule, would be a fruitless task. We must content ourselves by selecting such as commend themselves to our judgment as being grounded upon sound reason. In New York it is held that if a person select unfinished chattels, and have them completed under his special directions, and in a particular manner, the contract is for goods sold, and is within the statute. *Flint* v. *Corbitt*, 6 Daly, 429; *Bates* v. *Coster*, 1 Hun, 400; *Cooke* v. *Millard*, 5 Lans. 243. In *Smith* v. *Railroad Co.*, a case decided in the same state, and reported in 43* N. Y. 180, a contract was entered into for the sale of a quantity of wood which was growing upon plaintiff's land. The wood was to be cut by the plaintiff. This was held to be a contract within the statute. *Downs* v. *Ross*, 23 Wend. 270. The Massachusetts courts have decided upon both sides of the question. In *Mixer* v. *Howarth*, 21 Pick. 205, defendant gave plaintiff an order to complete an unfinished carriage then belonging to plaintiff, and gave directions to have it trimmed with a certain lining selected by defendant. The carriage was to be delivered in a fortnight. This was held not to be a contract of sale within the statute. In *Clark* v. *Nichols*, 107 Mass. 547, a contract was made for the delivery of a quantity of planks, to be sawed from logs, under defendant's directions. The court here adopted the opposite rule to that laid down in *Mixer* v. *Howarth*, and held the contract to be within the statute. In *Goddard* v. *Binney*, 115 Mass. 450, the same court held, in a case where a person ordered a buggy to be built for him by the plaintiff, to be painted and lined in a particular way, and provided with a seat to be made of certain materials, and marked with defendant's initials, that the contract was for work and labor, and consequently not within the statute. In the other states there appears to be the same lack of harmony. Some hold that all executory contracts are within the statute. Wood, Frauds, § 297. Others,

that all executory contracts are not within the statute; that a contract for work and labor may be executory and still be valid. *Cason v. Cheely,* 6 Ga. 554, and cases cited.

The result of the doctrine declared by the greater part of the decisions seems to be that when the work and labor is to be performed upon materials belonging to the vendor, and the chattel, when completed, is to be delivered to the vendee, or when, the materials being the property of the vendor, the goods ordered are of the kind usually manufactured by him, and which he generally sold in the ordinary course of business, the contract is within the statute. But when the materials belong to the person to whom the goods are to be delivered when completed, and the other party is simply to expend his skill and labor upon them for the use of the owner, or where the goods to be made are of a special kind which the maker could not sell, unless the person ordering them should take them, the contract is without the statute. Wood, Frauds, § 298.

There are controlling facts in this case which bring it plainly within the rule last stated. The declaration alleges, and plaintiff testified, that the lumber to be sawed and delivered by him to defendant was of a special kind, suitable for use upon the Texas, Santa Fe & Northern Railroad. He also testified that the lumber was the kind used in constructing narrow gauge railroads, and was not the kind usually kept and sold by lumber merchants. He further said that the timber from which the lumber was to be made stood on government land, and that defendant was to obtain permission for plaintiff to go upon this land and procure timber to be sawed. If this be true, and we are bound to be believe it is, for it was not denied, then, surely, it cannot be seriously urged that this was a contract for the sale of goods, but is unquestionably a contract for work and labor, and not within the statute, even if it be held that the statute of frauds is in force here.

The third question is, admitting the contract to be binding, can defendant be held for the expenses mentioned in the last item of the bill of particulars quoted above? This item purports to be for expenses incurred while awaiting orders from defendant, after the contract was made, and plaintiff had moved his machinery and force to the vicinity of the timber to be cut. We think there was evidence from which the court could reasonably infer that these expenses were necessarily incurred by plaintiff in attempting to carry out his contract. Finding no error in the record, the judgment should be affirmed, and it is so ordered.

Long, C. J., and Henderson, J., concur.