GREEN and others *vs.* DIKEMAN and others.

A testator, by his will, executed in 1829, directed as follows: " I do hereby declare it to be my will and desire that *all my real estate* shall be sold as soon as conveniently may be, after the marriage or decease of my wife." The testator died in 1846, leaving lands acquired by him after the execution of his will. *Held*, that the power to sell was confined to the lands owned by the testator at the date of the will, and did not extend to those acquired afterwards.

The provisions of the revised statutes, enacted in 1830, directing that every will devising, or purporting to devise, *all the testator's real estate*, shall be construed to pass all the real estate which he was entitled to devise at the time of his death, was prospective merely, and did not embrace wills executed previous to the time when the statute took effect.

THE complaint in this cause alleged that Isaac Moser, late of the city of Brooklyn, died on the 18th of October, 1846, leaving a widow, and the defendant Samuel H. Moser and the plaintiffs, Susan Ann Bigelow, Eliza M. Green and Lydia K. Reynolds, and Isaac Moser, his only children and heirs at law, him surviving. That he also left a will, dated in April, 1829, by which certain bequests were made to his wife, and the remainder of his property was divided among his children and grandchildren in the manner therein specified. That said will also contained the following clause : " And I do hereby declare it to be my will and devise, that all my real estate shall be sold, as soon as conveniently may be, after the decease or marriage of my said wife." Samuel H. Moser, the son of the testator, and John Dikeman, were appointed executors, and proved the will. The complaint alleged that at the time of the execution of the will the testator owned certain real estate at the corner of Fulton and High streets in Brooklyn, which he subsequently sold and conveyed ; and that at the time of his death, in 1846, he was seised and possessed of certain other lots in Brooklyn, which had been acquired by him after the date of his will. That the widow died in October, 1850 ; and that, soon after her death, the executors, in pursuance of the direction and authority given in the will, sold and conveyed the pieces of land of which the testator died seised, and which he had purchased after the execution of his will, and out of the proceeds paid the funeral charges and the debts of the testator, and rendered their account to the surrogate. That un-

der the decree of the surrogate, made upon such accounting, in which the will was recognized as controlling the disposition of the estate, the executors paid out and distributed the residue of the proceeds, except the sum of $2524.13, which they had invested on bond and mortgage. That some time after such distribution and investment were made, the plaintiffs were informed that the title conferred and given by the executors on the sale of one of the lots had been objected to, on the ground that the same having been purchased by the testator after the execution of his will, it did not pass under the will; and thereupon, for the purpose of obviating said objection, the plaintiffs, and the testator's son Isaac and the defendant Samuel A. Moser, executed to the several purchasers of the land so sold by the executors deeds of conveyance for the premises purchased by them respectively, to confirm their respective titles thereto; but that such deeds were executed by the plaintiffs in ignorance of their legal rights, and without any intention on their part, of waiving or relinquishing such rights. And the plaintiffs claimed and insisted that the said Eliza M. Green, Susan Ann Bigelow and Lydia K. Reynolds were each entitled, as heirs at law of the testator, to receive from the executors the equal third part of the sum so invested, to be held and disposed of by them as their own separate estate; and that the said real estate having been purchased by the testator subsequent to the execution of his will, did not pass under it, but that with respect to such real estate the testator died intestate, and the title thereto descended to his children as his heirs at law. The plaintiffs alleged their belief that all the proceedings of the executors, in selling the real estate and in distributing and investing the proceeds, had been had and done in good faith, but under an erroneous impression as to their powers under the will; and the complaint alleged that the plaintiffs were not desirous of taking any measures to set aside the sales made by the executors; that they were informed the executors were willing to call in the money so invested by them and pay over the same to the plaintiffs, if so directed by the order of this court, but that under the circumstances they declined doing so without such order. The plaintiffs demanded

a judgment or decree declaring that as to the real estate of the testator, sold by the executors, he died intestate, and requiring the executors either to call in and collect the money invested and pay the same over to the plaintiffs, one-third part to each; or that they assign to the plaintiffs the several bonds and mortgages taken to secure such investments; or for such other relief, &c. Answers were put in by the defendants, admitting the truth of the matters set forth in the complaint.

*J. M. Pray*, for the plaintiffs.

*J. Dikeman* and *A. W. Bennem*, for the defendants.

*By the Court*, S. B. STRONG, J. The will of Isaac Moser, which gives rise to the question principally involved in this action, is dated in April, 1829; and although I can find no allegation in the pleadings as to the time when it was executed, the fair inference is that the date designates the time when it was made. The testator died in 1846. The will contains the following clause: " I do hereby declare it to be my will and desire that *all my real estate* shall be sold as soon as conveniently may be, after the marriage or decease of my wife." It also disposes of the proceeds. The lands sold by the executors were acquired by the testator after the execution of his will; and the leading question in the case is, whether it conferred upon them the requisite power to sell the subsequently acquired real estate.

It is generally agreed that the right to devise lands is, with us, purely statutory. It probably existed, to some extent, under the Anglo-Saxon government, but it was in effect abolished, in England, by the feudal system introduced into that country by William the Conqueror. The common law was modeled principally upon that system, and whatever changes were made were principally effected by statute.

The statute of wills in force in this state when the will in question was executed, authorized any person *having* any estate of inheritance in lands to devise *the same*. The power related to *existing* estates, and did not extend to *future* acquisitions.

Green *v.* Dikeman.

The word "having" has reference to the time when the will is made; the testator then acts; he declares his present intentions, and does all that is necessary for him to do to effectuate them. Should he become deranged immediately afterwards, and the disability continue to the time of his death, the will would nevertheless be valid. The rule of law is the same as the dictate of common sense—that the testator makes the devise when he makes his will, and not when he draws his last breath. The rules relative to the republication and revocation of wills are based upon the assumption that they are made at the times when they are executed.

When, therefore, the testator authorized his executors to sell all his lands, he could not empower them to sell any other than those which he had at the time when he executed his will; and the inference is that he designed the power should operate upon his existing estate, and did not intend that it should go any further.

The revised statutes of 1830, under which the executors acted, and supposed they had a right to act, provide that every will that *shall* be made by a testator, in express terms, *of all his real estate*, or in any other terms denoting his intent to devise all his real property, shall be construed to pass all the real estate which he was entitled to devise at the time of his death. This conferred upon the testators the power to make their wills operative upon their future acquired real estate. But it was, as it ought to have been, wholly prospective. The word "shall" had reference to the future. The statute had been passed when the will in question was made, but it did not go into operation until several months afterwards. It speaks as of the time when it became effective. That is the rule of construction established by the legislature when the revised statutes were passed. The 10th section of the act concerning those statutes, passed on the 10th of December, 1828, declares that whenever the terms "heretofore" or "hereafter" occur in any part of the revised statutes they shall be construed as having reference to the time when the statutory provision shall commence and take effect. The legislature, to preserve its consistency, must have designed that

Green *v.* Dikeman.

the rule should apply to all terms denoting the past or the future.

If the statute of wills is to be deemed as an enactment made subsequent to the execution of the will introduced in this cause, it could not have enlarged a clause in an executed instrument, so as to make it include new subjects. That would have been so manifestly against right, that it would have exceeded the legislative power; unless, as some have contended, (and as I do not believe,) the legislature is omnipotent. It is, however, enacted expressly, in the same title with the provision which I have quoted, that it shall not affect the construction of any will made before the chapter of which it forms a part shall take effect. Under this provision, it has been decided by our court of appeals that the will of the late Gen. Bogardus, which was made before the time when the revised statutes took effect, although his death occurred after they became operative, did not pass the title to his lands purchased after the execution of his will. (*Parker* v. *Bogardus,* 1 *Selden,* 309.) The learned judge who delivered the opinion of the court in the case to which I refer, seems to have considered the question involved to be one of construction merely, but it strikes me that the decision might well have been based upon other and higher grounds.

In the case under consideration it must be declared that the power to sell the testator's real estate, did not extend to the lands acquired by him after the date of his will, and that consequently the sales of such lands, made by the executors were null and void, and the heirs at law inherited such real estate free from any of the dispositions made in such will.

The conveyances subsequently executed by the heirs at law cannot be considered an affirmance of the power as claimed by the executors, nor as an assent to the distribution of the proceeds, pursuant to the directions in the will. They were made upon the supposition that the executors had not the power, and with a view to transfer a valid title to the purchasers. It was an *adoption*, and not simply an affirmation, of the sale. After that, the executors held the proceeds as trustees for the heirs. Whatever the trustees have since done with the moneys, must have been

Green *v.* Dikeman.

with the consent of the *cestuis que trust*, and should be affirmed. For the same reason the trustees are entitled to their expenses and commissions. Should there be any dispute as to the amount, it may be referred to Judge Morse, to take an account of the same.

The surrogate's decree did not affect the rights of the heirs to the avails of their own lands, as he had no jurisdiction over the subject matter.

The costs of the several parties must be deducted from the funds in controversy.

The part of the proceeds of the undivided real estate, belonging to the deceased son, has been appropriately paid to the surviving brothers and sisters. The two surviving sons have received their portions. The residue must be divided equally between, and paid to, the three daughters. It may be optional with the executors to collect and pay over the moneys, or, on being refunded their expenses and receiving their fees, to transfer the securities.

It may be expressly declared that the three daughters are entitled to the absolute property in their respective portions, free from any claim of their respective children.

[KINGS GENERAL TERM, October 3, 1854. *Brown, S. B. Strong, Dean* and *Rockwell*, Justices.]