By the Court:

Jones, J.
The act of 1813 provides (R. L. of 1813, vol. 2, p. 414) that, on the confirmation of the report of the commissioners of estimate and assessment, “ the Mayor, Aldermen, and Commonalty of the City of New York shall become and be seized in fee of all the land, hereditaments, tenements, and premises described in such report, that shall or maybe so acquired for the purpose of opening, laying out, and forming, extending, enlarging, or otherwise improving the streets or avenues so to be opened, laid out, and formed, extended, enlarged, or improved, the same to be appropriated, converted, and used to and for such purposes accordingly. And thereupon, the said Mayor, Alder *85 men, and Commonalty, or any person or persons acting under their authority, may immediately, or at any time thereafter, take possession of the same, or any part thereof, without any suit or proceeding at law for that purpose. In trust, nevertheless, that the same be appropriated and kept open for or as part of a public street, avenue, square, or place forever, in like manner as the other public streets, avenues, squares, and places are, and of right ought to be.”
It is clear, from this, that the fee is passed simply to feed the specific trust, and that the Corporation takes the fee simply as trustee, upon and for that trust.
An acceptance of the trust is always a condition precedent to the passing of the legal title which is designed to feed it.
Such acceptance may be either expressed or implied, and if one be under legal obligation to accept, his acceptance would be implied from that fact.
Under the law of 1813, an acceptance of the trust, at the expiration of four months from the date of the confimation of the report, and perhaps at the date of the report, would be implied from the fact of their petitioning for the opening, &c., of the streets, &c., and from the obligation imposed on them by that law of paying for the land taken at the expiration of that four months.
But the act of 1818 (Laws of 1818, p. 196) appears to me to allow the Corporation at least fifteen months in which to accept the trust. That act is as follows:
“ That the Mayor, Aldermen, and Commonalty of the City of New York may suspend the opening, extending, enlarging, altering, and improving of any street, road, avenue, or public place which may be ordered to be opened, extended, enlarged, or altered in the .said city, in pursuance of the provisions of the act entitled ‘An act to reduce several laws relating particularly to the City of New York into one act,’ for such time or times as they shall think proper, not exceeding fifteen months in the whole, after the confirmation of the report of the commissioners of estimate and assessment; and farther, that the said *86 Mayor, Aldermen, and Commonalty shall not be required to pay any sums of money which may be awarded to any person on account of the opening, extending, enlarging, altering, and improving of any such street, road, avenue, or public place until the expiration of four months after the expiration of the time or times which may be appointed by them, as aforesaid, for carrying the said improvements into effect.”
The trust upon which the land is to be received is to open, &c., the contemplated street, &c., and keep it open for and as a public street. The act of 1818 expressly authorizes the Corporation to defer entering on this street for a period not exceedinfifteen months from the confirmation of the report, and does not require the land to be paid for until after the expiration of four months from the time appointed by them for entering on the trust. There can be no acceptance prior to the expiration of that time, therefore, implied from the petitioning for the opening of the street or'the obligation to pay for the land. Indeed, the act of act of 1818 contemplates an express acceptance by an affirmative act if the Corporation intend to accept at a period prior to the expiration of the fifteen months, for in that event it makes the time of payment date from the term fixed by it by an affirmative act for entering on the performance of its duty.
I am satisfied,that this is the proper construction to be given to the provisions in question, contained in the acts of 1813 and 1818.
Since, then, the Corporation did not accept the trust during the eighteen months, the fee did not pass during that period.
This view gains great strength from the fact that, except upon' this construction, the act of 1818 would be unconstitutional, as taking private property for public use without just compensation, for it would result in taking from an owner of property the use of it for the period of eighteen months, without giving him any - compensation ' therefor, because - the period during which the Corporation might, under the act of 1818, delay the opening,&c., and the payment for the land, being indefinite, the commissioners would be unable to adjust the damages for the de *87 privation of the use of the property for that uncertain period and no substitute is provided for a compensation for such deprivation, in the way of interest on the amount awarded for the value of the land. The.primary rule that the language of the legislature is, if possible, to be interpreted in such manner as to make it consistent with the constitution (Bloodgood v. M. & H. R.R. Co., 18 W., p. 19), is applicable to the provisions in question,, and calls for the construction I have given to them.
A further suggestion may be made.
For a long time it was a mooted point whether an act which authorized the taking of private property for public use, before actual payment of a just compensation therefor, was constitutional.
It was, however, finally settled that if certain and ample provision he made by law, so that the owner can coerce payment of the compensation adjusted and awarded to him, through the judicial tribunals or otherwise, without any unreasonable or unnecessary delay, the constitutional requirement for the making of just compensation is sufficiently satisfied (People v. Hayden, 6 Hill, p. 361).
This is substituting means for enforcing payment in place of actual payment.
Before such means can operate as a substitute, they must become perfected and ripened so as-to vest in the owner a present right of enforcement; until that time he has neither actual compensation by payment, nor the substitute for it, a right to enforce payment. On the principle, then, that a right to enforce payment is equivalent (so far as the constitutional requirement is concerned) to actual payment, payment is not made until such right has matured and become operative, and consequently the lands do not pass until that event occurs. It follows that, as, under the act of 1818, the right to enforce payment does not mature until four months after the expiration of the time which the Corporation may appoint for opening, &c., or until nineteen months after the confirmation of the report, the lands do not pass until one or the other of those events occur
*88 It is certainly sufficiently onerous to hold by construction that one’s land may be taken without his consent," and he be paid therefor by a right of action resulting perhaps in litigation, without pushing the construction further, and holding that he may be deprived of his property for a longer or shorter period, without even a right of action for compensation.
In cases of great public emergency, it may be that private property may be taken, not only without making immediate compensation, but also without even providing a means whereby such compensation may be enforced. To what extent such doctrine may extend, and to what cases it is applicable, it is not now material to inquire, as the present is clearly not a case of great "public emergency.
Judgment affirmed, with costs.