## N. Y. COMMON PLEAS.

### EDWARD H. GILLILAN, surviving partner, &c. agt. JAMES K. SPRATT.

Where *summary proceedings* are instituted by the landlord against the tenant, for holding over after the expiration of his term, and a trial is had and the whole case submitted to the justice for his decision, and thereafter the justice, on motion of the landlord *discontinues* the whole proceedings ; such decision of discontinuance is no bar to an action brought subsequently by the landlord against the tenant for *rent and damages* for the use and occupation of the premises.

The principles involved as to the effect of nonsuits, discontinuances or withdrawals of actions, pending before justices of the peace, in cases tried and submitted to them upon the merits, within the time prescribed by statute for decision, have no application to such a case as this. *Per* ROBINSON, J.

*General Term, March,* 1871.
*Before* LOEW, LARREMORE, *and* ROBINSON, *JJ.*

APPEAL from a judgment rendered against plaintiff at special term.

*By the court,* LARREMORE, J.—This action was brought to recover the sum of $900, being rent of premises No. 100, Liberty street, for the months of April, May and June, 1868.

By an indenture of lease between the parties, dated March 6, 1867, the premises in question were demised to the defendant by the plaintiff for the term of one year from May 1, 1867, at the yearly rent of $3,600, payable monthly on the first day of each succeeding month. The lease, among others, contained the following covenant, that in case the building was required to be removed in consequence of the extension of Church street, then *from the time said building was ordered to be removed by the city*

*authorities, said lease should become null and void, and rent paid to that date.* On the 30th day of December, 1867, proceedings were taken and an order duly made and entered by the supreme court at general term, confirming the report of commissioners of estimate and assessment appointed for that purpose, whereby it was ordered, that said premises would be required to be taken for the extension of Church street. On the 2d day of May, 1868, summary proceedings were instituted by the plaintiff, before Justice QUINN, to remove the defendant from said premises, for holding over after the expiration of the term without permission of the plaintiff. Issue was joined therein, and a trial had thereon, on the 7th and 9th days of May, 1868, when the whole case was submitted to said justice, who on the 19th day of May, 1868, on motion of the landlord in said proceedings, (the said plaintiff,) and without notice to the other party, discontinued the same.

The learned judge, before whom this action was tried, found as questions of fact, in addition to the summary proceedings above stated, the making, delivery and acceptance of said lease, the occupation of the premises therein described by the defendant, from May 1, 1867, to May 1, 1868, the continuance of such occupancy by him through the months of May and June, and until after the 1st of July, 1868, and that the value of the use of said premises from May 1, 1868, to July 1, 1868, was $600, which added to the rent for the month of April 1868, is $900, and that the interest on said several sums up to the day of trial was $58 95, making in all $958 95, no portion of which had been paid by the defendant to the plaintiff. He also found as conclusions of law, that the action of said Justice QUINN, in said summary proceedings, was an adjudication, and judgment in favor of the tenant therein, (the defendant in this action,) and was final and conclusive between the parties as to the subject matter of said action, and was a bar to the plaintiff's alleged right to recover rent

Gillilan agt. Spratt.

or damages for the use and occupation of said premises, and thereupon dismissed the complaint, with costs. From the judgment entered on this decision, the plaintiff appeals.

It was held by the general term of this court, in December, 1869, in *Detmold* agt. *Drake, et al.*, (a case similar to the one at bar,) that until the opening of the street, the land appropriated therefor by the public authorities, cannot be employed by them for any other purpose than that contemplated and established by the report of the commissioners. In the meantime, from the date of the confirmation of said report until such opening is actually commenced, the owner of the building, (unless required to remove it,) can retain possession of it, and is entitled to all the benefits of such possession.

The parties hereto evidently contemplated such a contingency in relation to the premises in question, and provided in the lease thereof, that the same should become null and void, from the time the building was ordered to be removed by the city authorities.

There is no evidence before us that any order for such a removal was ever given, and it is fair to conclude that the defendant was not disturbed in his possession during the continuance of said lease. Besides, it appears affirmatively from the findings of the jury at the trial, that the defendant continued in the occupation of the premises until after July 1, 1868, and that the value of the unpaid rent therefor, up to that time, was $900. It is not pretended that any claim for said rent has been made by any one, except the plaintiff, and I think, his right thereto unquestioned, unless the summary proceedings hereinbefore mentioned, constitute a bar to its recovery.

The proceedings referred to were taken May 2, 1868, and after said lease had expired by its own limitation, to dispossess the defendant herein as the tenant of said premises, *for holding over after the expiration of the term without permission of the landlord.* The defendant, by his counter-

affidavit, denied that he thus held over, and also denied that plaintiff was his landlord, on the ground that the title to said premises was, by said order of the supreme court of December 30, 1867, vested in the mayor, aldermen and commonalty of the city of New York.

The question of rent was not raised, or at issue, upon the trial and consequently could not have been submitted to the justice for adjudication, The justice did not decide the case as submitted, but on application of the relator discontinued the proceedings.

We are asked to hold such action on his part to be a final and conclusive judgment in favor of the defendant. But what is the nature and effect of such an adjudication?

Is it thereby only established that defendant did not hold over after expiration of his term, and without permission? Or are all the averments in defendant's counter-affidavit, of which proof was offered on the trial, to be deemed *res adjudicata?* This would compel us to hold that the plaintiff was not entitled to the possession of said premises after the order confirming the report of the commissioners of estimate and assessment was made, when, as we have already seen in the case of *Detmold* agt. *Drake,* a directly opposite theory was maintained by the general term of this Court,

The cases cited to sustain the position of the respondent (*Hess* agt. *Beekman,* 11 *Johns.,* 457; *Elwell* agt. *McQueen,* 10 *Wend.,* 521; *Peters* agt. *Diossy,* 3 *E. D. Smith,* 115; *White* agt. *Coatsworth,* 2 *Seld.,* 137; *Demarest* agt. *Darg,* 32 *N. Y.,* 284), all proceed upon the theory that the judicial mind had acted upon the merits of the case as submitted, and giving expression to such action by a judgment or final determination. The defendant in *Hess* agt. *Beekman* " suffered *judgment* to be entered against himself for costs." In *Elwell* agt. *McQueen* the court say, " although he (the justice) may call his *judgment a nonsuit,* and *enter it* accordingly, if the record or minutes of the trial show it was rendered after the cause was submitted to him, and after he

Gillilan agt. Spratt.

took time to deliberate, and not at the trial, it will be con-sidered a judgment for the defendant, and will be a bar to any subsequent action."

It might be claimed that as the justice had no authority to discontinue said summary proceedings, that the same are still under advisement by him, and his decision thereon might be enforced. Whether this view be correct or not, it is evident that said justice, by allowing such discontinu-ance, plainly indicated that he had not passed upon the merits of the case, but intended to leave the parties in the same position as if no such proceeding had been instituted. To construe such action on his part as a final determination is to compel him, by implication, to do that which he never intended, but expressly disavowed. Nor are we to presume that the justice would have decided contrary to law, and as the whole case turned upon the question of ownership, as decided by this court in the case of *Detmold* agt. *Drake*, above referred to, it is fair to assume that if the justice had finally determined the matter, such determination would have been in accordance with the law as thus established. No review could have been had on a discontinuance of said proceedings, and if said action be regarded as final, the party concluded thereby is without remedy.

In the case before us, the question of rent was not raised or litigated, and as it appears that no final adjudication was intended, it would be a severe application of the rule, where the occupation of the premises and the value thereof, are conceded, to deny a recovery on the ground of a former adjudication in which the same merits were not involved, and especially when it appears that the greater portion of said rent was for a period of time after the expiration of the lease, and was claimed solely on the ground of the use and occupation by the defendant of the premises in question.

The judgment appealed from should be reversed, and a new trial granted.

LOEW, J.—I concur that neither the summary proceedings to recover possession of the demised premises, by reason of the expiration of the defendant's term, nor the action of the justice in discontinuing the same, should be held a bar to plaintiff's right of recovery in this action, which was for rent and damages for use and occupation, and I therefore agree that the judgment should be reversed, and a new trial ordered.

ROBINSON, J.—I am of the opinion that the learned judge, before whom this cause was tried, erred in regarding the summary proceedings between the landlord and tenant, had before Justice QUINN, of any force or effect upon the rights of the parties, as presented upon the pleadings and evidence.

In those proceedings, instituted by the present plaintiff, for the purpose of dispossessing the defendant as his tenant, for holding over after expiration of the term, without his permission, the defendant denied the tenancy, or that he so held over after expiration of his term, and while admitting the original letting, set up that the plaintiff's title *had ceased and become vested* in the corporation of the city of New York.

The issue thus joined, came on for trial before the justice, and after the testimony was closed, the case was submitted to him for adjudication and decision, on the 9th of May, 1869, but before he had rendered any decision, and on the 19th day of May 1869, on motion of the landlord, (the plaintiff in this action,) and without notice to the other party (defendant,) the justice discontinued the proceedings.

Upon these facts the judge, who tried this cause, held that such action of the justice was in law an adjudication, and a judgment in favor of the defendant, which was final and conclusive between the parties, as to the subject matter, and a bar to plaintiff's right of recovery of rent accruing under the lease for the last month, or damages for the subsequent use and occupation of the premises, and has thus

decided that, by such proceedings, the landlord's title was determined, and that the property and right of possession thereof, belonged in fact, to the corporation of the city of New York.

In the accompaning opinion, the decision is predicated upon certain *dicta* of the courts as to the effect of nonsuits, discontinuances or withdrawals of actions, pending before justices of the peace, in cases tried and submitted to them upon the merits, within the time prescribed by statute for decision. The cases of *Hess* agt. *Beekman*, (11 *Johns.* 457 ;) *Elwell* agt. *McQueen*, (10 *Wend.*, 521 ;) *Peters* agt. *Diossy*, (3 *E. D. Smith*, 115 ;) *Demarest* agt. *Darg*, (32 *N. Y.*, 284;) and *White* agt. *Coatsworth*, (2 *Seld.*, 137 ;) are referred to in this view of the case, and in support of the judgment.

The principle to be deduced from these cases (so far as it affects the question of *res adjudicata*,) seems to have originated in *Hess* agt. *Beekman*, and to have been founded on a strict construction of the provisions of the statute relating to courts held by justices of the peace, (1 *R. S.*, 388, § 2,) which required the justice, after having heard the proofs and allegations of the parties, *within four days thereafter to give judgment thereon agreeable to law and equity, with costs of suit*. In that case, the cause had been so tried and submitted, but within four days, the plaintiff *withdrew* his suit and suffered judgment to be entered against him " with costs," and the court held, on a new action for the same cause, that " the statute was imperative ; that after hearing and examining the proofs and allegations of the parties, the justice within four days, *shall give judgment thereon*"; that " the parties, are not in court for any purpose, but to receive judgment," and that the maxim "*nemo bis debet vexari pro eadem causa*" was applicable. The judgment was held a bar to a new action for the same cause, and the court say, "the merits were fairly entered into and investigated and submitted to the justice. It best comports with the

spirit and policy of the statute, to hold the plaintiff concluded."

The authority of this case, as a rule, governing proceedings in courts of justices of the peace has been followed or recognized in the other cases above cited, and its manifest spirit and intent is to discourage renewed litigation in such petty courts and to save parties from being harrassed about such small matters as were there cognizable, where the costs to be awarded, were so trivial, and inadequate an indemnity for the trouble and expense of a second defense.

The consequences of such an adjudication, as to the withdrawal or discontinuance of such a suit within the four days allowed for decision, are inconsiderable, while its application is confined to the particular claim in suit, and merely results in preventing a second action from being brought for the *same* cause, but its inconvenience, if not injustice, will become apparent when in litigations between the parties on other claims, such a fiction of the law is to be assumed (contrary to the truth,) as an actual decision by the justice upon the merits, and the principle of *res adjudicata* deduced from it, held as decisive in other controversies that may arise between them, upon all questions of fact and of law, involved in the original action. The proceedings in question were merely discontinued; and were such that the justice could not render therein any formal judgment of " discontinuance." He, in fact, made no decision or *final determination* from which an *appeal* could have been taken by either party ; yet, if his mere allowance of a withdrawal of the proceeding is to be held a judgment in law adverse to the landlord, it cannot be limited as an adjudication upon any particular issue, but must be regarded as determining all such as were necessary to uphold the judgment or were within the issues joined or tendered. Its application to the facts and circumstances of the present case, demonstrates the extent to which such a departure from the rule of the common law may work injustice. Here the landlord, in

attempting, in summary proceedings, to remove his tenant for holding over the term without his consent, is met by an answer, that his title has become vested in the corporation of the city of New York, and although no eviction, disturbances or attornment to the new owner, is alleged, or was claimed on the trial, and the matters so set up by way of answer to his claim, constituted no defense; yet, the proceedings instituted by the corporation of the city of New York, under the act of 1813, relating to the opening of streets in said city, and the order of the supreme court confirming the report of the commissioners of estimate and assessment therein, by which the property in question was taken, and damages awarded the plaintiff therefor, being simply shown and the justice, after *nine* days delay and failure to render any decision, having, on motion of the plaintiff, and without notice to the defendant, discontinued said proceeding, such *non-action* or *discontinuance* is to be held as having operated as an adjudication, rendered by the justice, upon the facts so at issue, adverse to the plaintiff's title and right of recovery against his tenant for rent, for use and occupation.

Such a defense has been held by this court in *Detmold agt. Drake and another* as unavailable to the tenant until the corporation has taken possession, and the same doctrine is maintained by the superior court, in *Strang* agt. *N. Y. Rubber Co.*, (1 *Sweeny*, 78,) but the construction given to this result or discontinuance of the summary proceedings, as determinative of the question at issue, renders it, however erroneous, conclusive as to all matters of fact or of law that were, or ought to have been proved or presented, by way of answer, to the defense, thus assumed to have been successful. (2 *Smith Lead. Cas, by Hare and Wal.*, 6 *Am. Ed.*, 809, 810.) I am of the opinion that such application of the decision in *Hess* agt. *Beekman,* and those recognizing it, cannot be held decisive or as affecting this case.

*1st.* At common law, the discontinuance of any suit or proceeding, is no bar to a new action for the same cause. (*Cockroft* agt. *Smith*, 11 *Abb.*, 62 ; *Earl* agt. *Campbell*, 14 *How.*, 330 ; *Hull* agt. *Blake*, 13 *Mass.*, 155.)

Upon such discontinuance, the only remaining right of the defendant is to be paid his costs, and, if the plaintiff neglects to do so, then the defendant may go on with the suit, and proceed to judgment for their recovery. (*James* agt. *Delevan*, 7 *Wend.*, 511 ; *Huntington* agt. ·*Forkson*, 7 *Hill*, 197 ; *Hicks* agt. *Brennan*, 10 *Abb.*, 304 ; *Averill* agt. *Patterson*, 10 *N. Y.*, 502.)

A justice of the peace, however, was authorized, by the twenty-five dollar act, (1 *R. S.*, 393,) in case the plaintiff was nonsuited, or discontinued or withdrew his action without defendant's consent, to award judgment for costs, against him, and so also by the $50 *act of* 1824, *ch.* 238, § 14, and by 2 *R. S.*, 246, § 119. But the justice loses jurisdiction, and the action *becomes discontinued,* if he adjourns the cause or defers action in any other manner, than such as is specially pointed out by the statute regulating his proceedings. (*Kimball* agt. *Mack*, 10 *Wend.*, 497 ; *Thompson* agt. *Sayre*, 1 *Den.*,175 ; *Wilcox* agt. *Clement*, 4 *Den.*, 160 ; *Weeks* agt. *Lyon*, 18 *Barb.*, 538 ; *Aberhall* agt. *Roach*, 11 *How.*, 95 ; *Wright* agt. *McClave*, 3 *E. D. Smith*, 316.) So to, if he fails to render judgment " forthwith," on the day of trial in case of nonsuit, discontinuance, withdrawal and confession, and on the rendering of the verdict of a jury, (*Sibley* agt. *Howard*, 3 *Den.*, 72 ; *Beattie* agt. *Qua*, 15 *Barb.*, 132,) and in all other cases within four days after the case is submitted to him for final decision. (*Watson* agt. *Davis*, 19 *Wend.*, 371 ; *Young* agt. *Rummell*, 5 *Hill ;* 60, *S. C.*, 7 *Hill.*, 503 ; *Bissell* agt. *Bissell*, 11 *Barb.*, 96 ; *Wiseman* agt. *Panama R. R. Co.*, 1 *Hilt.* 300 ; *Bloomer* agt. *Merrill*, 1 *Daly*, 485,) or where he has held the case open for twenty-four hours, to enable a party to procure his witnesses, (*Green* agt. *Angel*, 13 *Johns.*, 469,) so by failure of the plaintiff, to appear

before a verdict rendered by a jury; or on being called on the coming in of the jury, a verdict could not be received and a nonsuit must be rendered. (*Platt* agt, *Storer*, 5 *Johns.*, 346; *Shove* agt. *Raynor*, 3 *Den.*, 78; *Douglass* agt. *Blackman*, 14 *Barb.*, 381.) In this court, the principles of *Hess* agt. *Beekman*, have been held not to apply where the time reserved by the justice for his decision was upon a motion for nonsuit, (*Seaman* agt. *Ward*, 1 *Hilt.*, 52,) and its application to actions in the marine court of this city, has been repudiated by the supreme court, in *Dexter* agt. *Clark*, 35 *Barb.*, 271.)

The justice before whom the summary proceedings in question were instituted was, by the act of 1857, chap., 344, § 47, allowed in actions pending before him, eight days after the trial of the action to render his decision; but neither that act nor any of the provisions relating to actions before justices of the peace, have any reference to the special proceedings, instituted by landlords to recover possession of lands.

In the statute relating thereto, (2 *R. S.*, 512, *&c., as amended by the acts of* 1849, *chap.* 193, *of* 1851, *chap.*, 460, *and of* 1857, *chap.* 684, 3 *R. S.*, *5th ed.*, 835,) the magistrate before whom it is pending, (*by* 2 *R. S.*, 515, § 41,) is authorized " upon request of either party, to adjourn the hearing of such application for the purpose of enabling such party to procure his witnesses, whenever it shall appear to be necessary, such adjournment shall in no case exceed ten days." And he also is allowed, under certain circumstances, to stay the issue of the warrant of removal for ten days, (3 *R. S.*, *5th ed.* 831, § 44.)

Previous to the enactment of the 41st section, above quoted, it had been decided, in *Nichols* agt. *Williams*, (8 *Cow.*, 13,) that under the statute giving summary means to landlords to oust tenants wrongfully holding over. (*Laws of* 1820, *chap.* 194, substantialy re-enacted in 2 *R. S.*, 513, *&c.*,) the judge or justice before whom the proceeding

was pending, had no power to adjourn it, and this 41st section was intended "to supply such omission." (*Rev. Notes*, 3 *R. S.*, 2d. ed. 766,) and to relax the stringency of the rule referred to, to such extent as the legislature deemed necessary.

No time, however is, in express terms, prescribed or allowed by statute to the magistrate, beyond the day of trial, within which he shall render his decision. None of the various magistrates, (2 *R. S.*, 513, § 28,) before whom the proceeding can be had, (except justices of the peace, by the act of 1849, chap. 193, § 6,) are required to make entry of their decision and, although the statute contemplates some time to ensue between the decision and the issuing of the warrant, unless the very day of the trial be regarded as the day for such decision there is no certain mode for calculating the period of ten days, allowed for a stay of the warrant by the act of 1857, chap. 684, § 4, (*Watson* agt. *Davis*, 19 *Wend.*, 37.) The magistrate is not authorized as in the justice's court act, to render judgment of "non-suit, discontinuance or withdrawal of plaintiff's action." (2 *R. S.*, 246, § 19, *sub.*, 1.) Although for defect in the landlord's application or proofs, he may undoubtedly dismiss the proceedings. If, upon the merits, his decision is favorable to the landlord, he is required to issue his warrant of removal. The proceedings before him are made by statute "summary," and present the sole question whether or not the tenant shall "forthwith" remove from the premises. (2 *R. S.*, 513, § 30.) The provisions authorizing an adjournment or postponement, for periods not exceeding ten days in each of the cases referred to, are specific, and under the ordinary rules of construction, the maxim, "*expressio unius est exclusio alterius*," is applicable and having regard to the character of the proceeding, a further or other postponement or adjournment would seem to have been contrary to the contemplation of the legislature.

Courts of special and limited jurisdiction take nothing by

implication (*Loomis* agt. *Bower's*, 22 *How.*, 361), and in analogy to the strict construction held as to the powers of this magistrate, while acting in the determiuation of actions pending before him, and applicable to all officers of special and limited jurisdiction, and upon the considerations above presented, the indefinite postponement of the proceeding in question, for purpose of deliberation and decision, was equally unauthorized, and the delay to make a decision for nine days, was as unjustifiable as if he had so delayed it for nine weeks, months, or years; and, in my opinion, afier such submission, the postponement ousted him of all juris-diction. But were this otherwise :

2*d.* There was in this proceeding, no such Procrustean rule, as in *Hess* agt. *Beekman*, impounding the parties for "four days," or any other specified period, nor can the allowance, by the magistrate, of its discontinuance, on mo-tion of the plaintiff, on the tenth day after submission be, by any reasonable fiction of law, held to be a *decision* in favor of the tenant, that a warrant ought not to have issued, for the reason stated in the tenant's affidavit, or as deter-mining on the merits the questions presented on that hear-ing.

There is no principle of statute or common law (except so far as it has found countenance in the before-mentioned strict construction of the justice's court act) which prevents the plaintiff or prosecutor, in any civil suit or proceeding instituted by him, from withdrawing or discontinuing it, prior to any decision rendered against him.

Whether such action or proceeding be at law or in equity in bankruptcy, insolvency, in proceedings for the opening of streets, or other statutory proceedings, or in arbitration, &c., until some adverse right has been legally decided and established against him, he has always been held as possess-ing a "*locus pœnitentiœ*," and entitled to abandon or with-draw the prosecution of his claim, whether it was *subjudice*, as question of fact, before a jury, or under advisement be-

fore a magistrate or other tribunal, deliberating upon the law, or in exercise of the functions of a jury as to the facts, subject only to the payment, to his adversary, of any such costs as the law imposes.

The peculiar rights of a defendant who has set up a counter-claim, to insist upon a continuance of the action, forms no exception. The rule of the supreme court, No. 47, adopted 1845 (now No. 32), prohibiting the plaintiff from submitting to a nonsuit, after the jury has gone from the bar to consider their verdict, is but one of practice, and certainly would not, under the rule of construction contended for, give a like effect to any discontinuance allowed, while the jury were deliberating and in contravention of the rule, as to a verdict.

The principles announced in *Hess agt. Beekman*, made applicable to proceedings in justice's courts, ought not to be extended and, in the present case, they were misapplied.

The proceeding before Justice QUINN could, in no sense, be held or regarded as decisive of the rights of the plaintiff, as landlord of the defendant, or his claims as stated in the complaint. The matters set up in the answer showing no eviction or attornment, presented no substantial defense, and the judgment should be reversed and a new trial ordered with costs to abide the event.