Webster *v.* Zielly.

---

WEBSTER *et al. vs.* ZIELLY.

Although hop roots, when rooted in the ground, are a part of the real estate of the proprietor of the soil, and will pass to the purchaser, by a conveyance of the land, and to the heir, by inheritance; yet where the plaintiffs agreed by parol to deliver to the defendant a quantity of hop roots, at a future time, at a specified price per bushel; *Held* that this was not an agreement to sell, or purchase, an interest in real estate, but was an executory contract by the plaintiffs to purchase for, or to sell and deliver to, the defendant an article of merchandise, which, when delivered, would be personal property, and was, therefore, not within the statute of frauds requiring such agreement to be in writing.

The statute of frauds does not require the *note* or *memorandum* therein specified to be made and subscribed by the party to be charged, at *the time* of making the agreement. It may be made at any time afterwards, and before the time for its consummation.

A subsequent written recognition of a contract void by the statute of frauds, is not only a ratification of it, but is a sufficient note or memorandum of the contract, within the statute.

The defendant applied to the plaintiffs, to know for what price they would deliver 100 bushels of hop roots, at a railroad depot, and the latter agreed to buy them for the defendant at $6 per bushel; telling them, at the same time, that they should have to pick up the roots from different persons; *Held* that this amounted to a contract for work and labor to be done and performed, and materials found, and money paid, laid out and expended; being an employment of the plaintiffs to take the job and incur the expense of purchasing the roots for the defendant, with a fixed compensation; and that the statute of frauds had no application to the case.

Payment of a part of the purchase money, on a contract for the sale of personal property exceeding $50 in value, need not be made at the time of

Webster *v.* Zielly.

making the original contract. If the payment be subsequently made by the one party, and accepted by the other, as the consummation of the prior agreement, it brings the case within the spirit and intent of the statute of frauds, and will be considered paying a part of the purchase money *at the time.*

Parties who have made a contract which is void under the statute of frauds may afterwards meet and by such an act as the statute requires, validate and make effectual that which, before, was a void or imperfect contract. And when the minds of the parties meet and concur in consummating the previous void agreement by paying and receiving the money, that is to be deemed the *time* of making the agreement, within the requirement of the statute.

The decision to the contrary in *Bissell* v. *Balcom,* (40 *Barb.* 98,) overruled.

THIS case was tried at the Franklin circuit in February, 1868. The plaintiffs' complaint was upon two separate parol agreements, made in January and February, 1867, between the parties, each agreement being for the purchase by the defendants of 100 bushels of hop roots of the plaintiffs, at $6 per bushel, to be delivered at the Malone depot on the Ogdensburgh and Lake Champlain Railroad, at the earliest "hop rooting," in the spring of that year. By the first agreement $50 was to have been paid down *at the time* of making the agreement, but was not paid until two or three days afterwards. The plaintiffs purchased the hop roots according to their agreements, and offered to deliver and were ready to deliver the whole. The defendant refused to receive or pay for them. The roots being perishable, the plaintiffs then sold them as best they could, but sustained a loss. The defendant set up in his defense the statute of frauds, and on the trial moved for a nonsuit on that ground, which was denied. The amount of loss was agreed upon between the parties, at the trial, and the court directed a verdict for that sum. From the judgment entered thereon, the defendant appealed. All other facts will appear in the opinion.

*Taylor & Hobbs,* for the plaintiffs.

*A. H. Ayres,* for the defendant.

*By the Court,* POTTER, J. 1. It is claimed by the defendant, that at the time of making the contracts in question, the subject of the contracts, hop roots, was real estate; that they were perennial, and not "*fructus industriales,*" and therefore the contract was within the statute of frauds, (2 *R. S.* 134, 135, §§ 6, 8,) which requires the agreement to be in writing, &c. I think there is no question now, that hop roots, when rooted in the ground, are a part of the real estate of the proprietor of the soil, and would pass to the purchaser by a conveyance of the land, (*Bishop* v. *Bishop,* 11 *N. Y. Rep.* 124,) and would pass to the heir by inheritance. In this case it was no portion of the plaintiffs' real estate, which they agreed to sell, or to purchase for the defendant; nor was it the real estate of any other person, that the plaintiffs agreed to deliver to the defendant. The contract was an executory contract to purchase, or to sell and deliver to the defendant, an article of merchandise, which, when delivered, would be personal property. Doubtless, in the very nature of things, both parties to the contract contemplated that the hop roots to be delivered, in order to be of any value, must, at the time of making the contract, of necessity, be then rooted in the ground. They could not well, otherwise, be preserved, and they would, therefore, at that time, be the real estate of somebody. It is equally fair and legitimate to presume that both parties contemplated, at the time, that before delivery a severance from the freehold must take place, so that the article, when delivered, would be personalty. It was in that character that the article was to be delivered and received. Had the agreement been for a present or executed sale of the hop roots of the plaintiffs, then forming a part of their real estate, even though the plaintiffs were to make the severance, so as to make the article personal estate at the time of delivery, it would present a different feature. In this case the plaintiffs neither agreed to sell, nor the defendant to purchase, an interest in real

Webster *v.* Zielly.

estate. In this respect the case is distinguished from *Green* v. *Armstrong*, (1 *Denio*, 552,) which was a parol agreement, by which the defendant was to sell trees standing and growing on his land to the plaintiff, with liberty to cut and remove them at any time within twenty years. This was clearly an agreement to sell an interest in real estate. Hop roots, when severed, are personal estate; they are a market commodity. It was such a commodity that the plaintiffs agreed to sell and deliver, and if the agreement was otherwise valid, they were responsible for its non-performance. I apprehend that a sawyer may make a valid executory contract with another person for the delivery to him of a quantity of saw logs at his mill, and it would be none the less valid, if it was in the contemplation of the parties that the contractor expected to purchase standing trees, or a timber lot of trees, to be converted into logs. Standing trees are real estate, but when severed and converted into saw logs, they become a market commodity, and are personal estate. So, I think, a sculptor or a stonecutter may make a good executory contract to sell and deliver, or to manufacture and deliver, a piece of statuary, a monument or mantelpiece, though the parties may contemplate, or even know, that the marble out of which it is to be prepared, is, at the time of making the contract, in the quarry, and part of the real estate of somebody; and that severance from the real estate is a matter of necessity before the contract can be consummated. Cases innumerable can be supposed, of this character—mineral waters, lime, cabinet and coopers' work, &c.

2. But there is another ground in this case that would take the case out of the statute of frauds, if otherwise within it. I think there was a *note*, or memorandum in *writing*, of the contract subscribed by the defendant, the party to be charged thereby. The statute does not require that this memorandum should be made at the *time* of making the agreement; it may be made at any time after-

wards, and before the time for its consummation. The parol contract was made with the plaintiffs, by the brother and agent of the defendant. On the 19th April, 1867, and after the plaintiffs had purchased, according to direction, 200 bushels of the hop roots, the defendant wrote to the plaintiffs, saying: "I wrote to my brother a few days ago, to buy another 100 bushels of hop roots; since then, roots begin to come in, and I think you had better hold on, and not buy any more for a day or two, until I see how it is going. Take all you have contracted. If it is 200 bushels, all right; but if not, hold on. I will write to James in a day or two." This letter, I think, is not only a ratification of the contract, but is a sufficient note or memorandum of the contract, in the words of the statute. It was held, in *Gale* v. *Nixon*, (6 *Cowen*, 445,) that a written recognition of a contract, void by the statute of frauds, though after it is entered into, will make it binding. (*See also Robt. on Frauds,.* 121; *Comyn on Cont.* 109, 110.)

3. There is another ground upon which this contract can be sustained; to wit, that of an original contract or undertaking on the part of the defendant to employ the plaintiffs to buy hop roots for the defendant, and to pay them as a compensation therefor, six dollars per bushel; or in other words, for work and labor to be done and performed and materials found and for money paid, laid out and expended for the defendant. The testimony was as follows: "James Zielly, (plaintiffs' brother and agent,) wanted to know what we would buy a hundred bushels of hop roots for, to be delivered at the depot of the Ogdensburgh and Lake Champlain railroad, here, for his brother? *We agreed to buy them for him*, at six dollars per bushel. He was to pay us $50 down, and the balance at the time of the delivery, the delivery to be at the first 'hop rooting.' I told him we should have to pick them up of different ones, and we could get the first hop roots. I expended my own money in the purchase of roots." There was no

HARVARD LAW LIBRARY

dispute about the facts. I think this amounted to an employment of the plaintiffs to take the job, and incur the expense of purchasing hop roots for the defendant, with a fixed compensation. The statute of frauds has no application to such a case. (*Crookshank* v. *Burrell,* 18 *John.* 58. *Sewall* v. *Fitch,* 8 *Cowen,* 219. *Rondeau* v. *Wyatt,* 2 *H. Black.* 63.)

4. The main point of defense, upon which reliance was made was, that, assuming the agreement to be a contract for the sale of personal property exceeding $50 in value, and there being, as conceded, neither a memorandum in writing nor a delivery of any part of the property, no part of the purchase money was paid down at the time of the making the contract. The $50 that was to have been paid by the terms of the oral agreement, was not paid at the time the parties first entered into the contract; but a few days afterward the defendant's agent called upon the plaintiffs and then paid it, and it was accepted by the plaintiffs. Upon the authority of the case of *Bissell* v. *Balcom,* (40 *Barb.* 98,) this would bring the case within the statute of frauds. By that case, the *subsequent* payment of the money, is not a compliance with the statute which requires it to be paid at the *time.* With all my respect for the authority of that case, and for the opinion of the distinguished justices who adopted that opinion, I am not able to concur in its soundness. It is contended that without that construction, the words *at the time,* in the statute, are useless, and that a different construction would repeal the statute, or nullify those words. Such is not my view. Statutes are always to be sensibly construed. It is doubtless true that these mere *words* of agreement, in such a contract to purchase, would be a void agreement, and would doubtless continue to be a void agreement, until some act should be done to make it binding. But when parties have thus agreed by *words;* where their minds have met and concurred as to the terms, while

their minds and wishes still continue and while they still desire it to be a legal agreement, may they not do an act that shall effectuate that desire? It would be strange, indeed, if two parties who had made a contract void under the statute of frauds, had not the power afterwards, to meet, and by such an act as the statute requires, validate and make effectual that which before was a void or imperfect contract, when the minds of both concur in making it valid. What is the subsequent meeting of the parties for this purpose, but a repetition of their former void agreement between themselves, and then adding such other act or thing as will bring it within the requirements of the statute? Can they not make a *valid* contract on the latter day, when both parties intend to do so, merely because they had previously made an invalid one? I think they can. What the defendant calls the *time* of making the agreement may just as well be regarded as an open proposition existing between them, until the subsequent validation of it, by an act of earnest, as by payment of money, or reducing the agreement to writing. After such an act has been performed, then the words of the statute " *at the time*," refer to the time of the last act of the parties to consummate the agreement. If this last act, which makes the contract legal, should never happen to be performed, then the words " *at the time*," must necessarily refer to the time when the void agreement was made. At the time this money was paid, there was a concurrence of minds; on the one part to bind the agreement that had been made in words only, and on the other part, to receive it as the consummation of that agreement. I do not hesitate to say, that such an act, of paying money under such circumstances, brings the case within the spirit and intent of the statute, of *paying a part of the purchase money at the time.* It is the *time* that the parties consummated the agreement as both understood and intended. This is the view taken by a distinguished judge in Massachusetts, (*Thompson* v.

*Alger,* 12 *Metc.* 435,) and one equally distinguished in this state, in *McKnight* v. *Dunlop,* (1 *Seld.* 543,) cited it with approbation.

In no view that I have been able to take of this case is there any legal defense to it. The judgment should be affirmed.

[WARREN GENERAL TERM, July 14, 1866. *James, Rosekrans, Potter* and *Bockes,* Justices.]