### DETERMINED IN THE

# THIRD DEPARTMENT

### AT

## GENERAL TERM,

## July, 1890.

---

LEMON THOMSON, Appellant, v. JOHN O. POOR and
CHARLES C. POOR, Respondents.

*Sale of bark on trees is a sale of realty — a written contract, within the statute of frauds,
cannot be changed before breach, by an oral agreement — estoppel.*

A sale of bark on growing trees is a sale of an interest in land and a contract
therefor must be in writing.

An oral agreement, purporting to modify a written contract which is within the
provisions of the statute of frauds, where the oral agreement simply reduced
by one-half the amount of bark which was purchased under the terms of the
written contract, and was entered into before any breach of the written con-
tract, is executory and void.

The question of estoppel does not arise in support of an oral agreement, purporting
to modify a written contract which is within the provisions of the statute of
frauds, where no adjudication of forfeiture of the original written contract is
asked, but it is simply insisted that the party claiming the right to the estoppel
should perform the original written contract and have all its benefits.

Under such circumstances it is not an answer to a claim for performance of the
original written contract that such contract was changed by an oral agreement,
and as thus modified was performed.

APPEAL by the plaintiff from a judgment of the Supreme Court,
entered in the office of the clerk of the county of Warren on the
28th day of December, 1889, dismissing the plaintiff's complaint,
with costs; and also from an order denying plaintiff's motion for a

new trial, made upon the minutes of the court before which the action was tried.

The action was brought to trial at the Warren County Circuit before the court and a jury, at which a verdict was rendered in favor of the defendants.

*Isaac Lawson*, for the appellant.

*D. S. Potter*, for the respondents.

LEARNED, P. J.:

This is an appeal from a judgment on a verdict in favor of defendants and from an order denying a new trial.

The complaint sets out at length a sealed contract between plaintiff and defendants, dated April 1, 1885, for the sale to them at a certain price of hemlock bark, on trees of a certain specified size, on a certain lot; the bark to be peeled by them, 1000 cords in each year after the first; the timber to be cut and piled by the plaintiff in the same year in which the bark is peeled.

The complaint charges that in the year 1886, the defendants peeled $935\frac{7}{8}$ cords; took a part thereof, but refused to take the remainder, and asks judgment for a certain sum. The answer, with some denials, avers a modification of the contract to the effect that defendants were required to peel only 500 cords instead of 1,000 in that year; that they peeled that amount and paid therefor. On the trial the plaintiff proved the contract. He proved that defendants peeled 500 cords in 1886, and paid therefor; that he directed the same man who had peeled for defendants to peel more; that $435\frac{7}{8}$ cords more were peeled. The plaintiff then rested. The defendants moved for a nonsuit on the ground that the action was not for a breach of the contract, but for not paying for a part of the bark which defendants had peeled. The nonsuit was refused.

It seems to us that the complaint is not well framed to set forth the real matter in issue. But considering that the real controversy appears in the answer, and that the complaint might be easily amended to suit the evidence, we think it better to pass to the important question between the parties. It will be seen that the plaintiff was the owner of the lot in question, and that he was engaged in lumbering from the lot. It was the bark only which he

sold to defendants. This bark should be removed before the trees were felled for lumbering The same man, Wakeley, seems to have been employed at both kinds of work on the lot — peeling the bark and felling the lumber. Wakeley had a contract with plaintiff, dated August 3, 1885, to fell the trees, which work was to be done " in such manner as to comply with the agreement for peeling and selling the hemlock bark."

The bark contracted for by defendants was to be used in their tannery. This tannery burned down July 6, 1885. After this their agent, Wait, called on plaintiff in November, 1885, and had a conversation with him. The versions given by Wait and by the plaintiff differ. The jury having found for defendants, they are entitled to have the version of Wait taken as correct. The important part is that, after mentioning the fire, Wait said that defendants had to get the contract reduced, if possible, in order to sell the bark to other parties ; that Wakeley was there as a jobber and needed something to do; that if they could reduce the amount to 500 cords they could make arrangements ; that plaintiff said any arrangement they could make with Wakeley would be satisfactory to him. There were two conversations, but this was the substance. Wait knew that Wakeley had the job from plaintiff to take off the logs.

The plaintiff insists that this alleged verbal agreement was inadmissible to alter the terms of the sealed agreement between the parties. That is the important question.

It should be noticed, however, that the plaintiff explains the conversation thus : That he said he would be willing to accommodate defendants in any way he could, but the only embarrassment he had was the contract he had with Wakeley ; that if they could make it satisfactory to Wakeley, he would do what defendants wished ; that is, that the plaintiff would consent to reduce the number of cords to be peeled annually, if defendants could induce Wakeley to modify in a corresponding manner his contract of August 3, 1885, for felling the trees.

The defendants afterwards, on February 26, 1886, made a contract with Wakeley to peel 500 cords each year, or more if they elected, to the amount of 1,000 cords each year. As by the terms of the written contract the defendants were to peel 1,000 cords each year, it is plain that their agreement with Wakeley to peel 500, or more

if they elected, up to 1,000, was not any greater or other act than they were obliged to do by the original contract. Therefore, their agreement with Wakeley gave no greater validity to the alleged verbal agreement between the plaintiff and Wait than it would have had if the plaintiff, at Wait's request, had agreed to reduce the annual amount to 500 cords. No new obligations were undertaken or acts done by defendants in consequence of the verbal agreement which they would not have had to undertake and do under the written contract.

In regard to the verbal modification it will be seen that, if valid, it doubled the time within which the sealed contract was to be performed, and within which defendants had the right to enter the lot ; and, as the sale was of bark on trees of a definite size, the growth of the trees might bring into the sale the bark on other trees than those included in the original contract. It does not seem to be disputed that a sale of bark on growing trees is a sale of an interest in land and must be in writing. (*Green* v. *Armstrong,* 1 Denio, 550, 556.)

"The better opinion," say the court, in *Swain* v. *Seamens* (76 U. S., 254, 272), "is that a written contract falling within the statute of frauds cannot be varied by any subsequent agreement of the parties, unless such new agreement is also in writing." (See *Emerson* v. *Slater,* 63 U. S. [22 How.] 28, 42.)

There are cases, like *Homer* v. *Guardian Mutual Life Insurance Company* (67 N. Y., 481), where one party, by agreeing to extend the time for a payment, has induced the other to neglect payment at the appointed day, and it has been held that the former could not take advantage of the neglect. But such cases are not like the present.

So, also, there are cases like *Dodge* v. *Crandall* (30 N. Y., 306), where, for a valuable consideration paid by the debtor, a person buys a mortgage already payable and agrees to extend the time of payment. Such cases are not like the present. The contract was between new parties, and the original contract had been broken. But it was said in the case last cited that, before any breach, and when the subsequent agreement is executory, it requires a writing of equal solemnity to effect a change in a contract under seal. So it was held in *Eddy* v. *Graves* (23 Wend., 84), referring to *Allen* v. *Jaquish* (21 id., 628) (See, also, Chitty on Cont. [11th Am. ed.], vol. 1, p. 155; Addison on Cont. [8th ed.], vol. 2, p. 894.)

The alleged change in the contract in the present case was very material; was executory; was before any breach of the contract had arisen; was verbal and purported to affect a writing which, unless in writing, would have been void. It, therefore, came most strikingly within the prohibition. And we may well inquire, if the original contract must have been in writing in order to be valid, by what logic can a material change, executory in character, be made verbally? To permit such a change thus to be made is to violate directly the statute of frauds. If A contracts in writing to sell B black acre, may B prove a subsequent verbal agreement modifying the contract so that A is made to contract to sell white acre also? Or, to make the case more analogous to the present, may B prove a subsequent verbal agreement that he is to buy only half of black acre?

The very evil at which the statute was aimed appears in this case. The parties disagree as to the alleged verbal agreement. And in place of a written contract, clearly expressing their meaning, we are left to the conflict between conflicting recollections of a brief conversation.

The defendants also insist on the doctrine of estoppel. Now, if the plaintiff were asserting that the defendants had forfeited all their rights under the contract for some failure to perform, and they could show that some act of the plaintiff had induced them to neglect performance, then there would be a place for the doctrine of estoppel. But the plaintiff asks no forfeiture of the contract. He insists that the defendants should perform it and should have all its benefits. They say the contract was changed by verbal agreement and we performed the contract as changed. That is, instead of performing the contract to its full extent, they performed it only half way. There is no estoppel here. Peeling half as much bark as they agreed does not prevent them from peeling and taking the whole. The defendants also urged that a party may waive a condition. (*Pechner* v. *Phœnix Ins. Co.*, 65 N. Y., 195.) As, for instance, that notice of other insurance given to an insurance company may operate as a waiver by them of the statement of such other insurance in the policy. That is, the company shall not insist that the policy is void for failure to comply with a condition which they have waived. But, as pointed out before, the plaintiff does not claim that this contract is void. He insists on its validity.

We think the judgment and order should be reversed and a new trial granted, costs to abide the event.

Landon and Mayham, JJ., concurred.

Judgment and order reversed, new trial granted, costs to abide event.