THOMPSON v. POOR et al.

(Supreme Court, General Term, Third Department. February 15, 1893.)

1. STATUTE OF FRAUDS—LAND CONTRACTS—VERBAL MODIFICATION.
    A contract to peel and take away a certain number of cords of bark yearly from trees growing on plaintiff's land is one for an interest in land within the statute of frauds, and, in an action to enforce it, a subsequent verbal modification of the executory written contract, before breach and without consideration, is inadmissable. Thomson v. Poor, (Sup.) 10 N. Y. Supp. 597, followed.

2. SAME—ESTOPPEL.
    Plaintiff is not estopped from enforcing the contract because of an alleged verbal modification, whereby defendants were only to take half as much bark each year as was specified in the original written contract. Thomson v. Poor, (Sup.) 10 N. Y. Supp. 597, followed.

Appeal from circuit court, Warren county.

Action by Lemon Thompson against John O. Poor and Charles C. Poor for breach of a written contract, wherein defendants agreed to peel a specified number of cords of hemlock bark from trees standing on plaintiff's land. From a judgment in plaintiff's favor, defendants appeal. Affirmed.

For former report, see 10 N. Y. Supp. 597.

Argued before MAYHAM, P. J., and PUTNAM and HERRICK, JJ.

H. A. Howard, (J. S. L'Amoreaux, of counsel,) for appellants.
I. & J. M. Lawson, (Isaac Lawson, of counsel,) for respondent.

MAYHAM, P. J.   The plaintiff, by a contract under seal, dated April 1, 1885, sold to the defendants all the hemlock bark on the trees, on a certain tract of land owned by the plaintiff, at the price of $1.75 per cord; and in the same contract the defendants purchased such bark, and agreed to peel from 800 to 1,000 cords the first year, and 1,000 cords yearly thereafter, until all of such bark was peeled.   On the 7th of July, 1885, the defendants' tannery in the vicinity of such bark land was totally destroyed by fire.   On the 3d of August, 1885, the plaintiff entered into a contract with one Wakely to cut, and deliver to a designated point, all the hemlock saw-logs from the territory which shall have been peeled over the previous summer in such manner as to comply with the agreement for peeling and selling hemlock bark on this lot.   On the trial the plaintiff put in evidence this contract with Wakely, under the objection of the defendants.   The plaintiff also proved that the defendants peeled in the year 1886 but 500 cords of this bark, for which they paid at the rate of $1.75 per cord, and that Wakely in the same year peeled, at the request of the plaintiff, 435 cords, which the defendants had not taken, and for which they had not paid the plaintiff.   The plaintiff in this action seeks to recover the balance claimed to be due under the contract for the 500 cords not peeled or taken by the defendants under the contract of April 1, 1885. The answer set up a modification of that contract by which the defendants claim they were to take annually after the first year only 500 cords of this bark in lieu of the 1,000 specified in the contract.

On the trial the defendants offered to prove a parol contract by which they claim that they were to peel only 500 instead of 1,000 cords each year, as set up in the answer.   The offer and rulings thereon are as follows:

"Lewis E. Wait, sworn for the defendants, testified: 'I reside at Glens Falls, and have about five years. Before that I resided in the town of Hadley, Conklingville. For the last fifteen years I have been in the employ of defendants as agent. Have been doing all their business in this state connected with the tannery business. Question. You have entire control of all their business? Answer. Yes, sir. Q. Making contracts? A. Yes, sir. Q. Authorizing others to make contracts? A. Yes. Q. In 1885, did the tannery burn down? A. Yes; they had a tannery north of Conklingville, thirteen miles, at Croweville, that burnt on the 6th or 7th of July. Q. Did you, after that, have a conversation with Mr. Thompson in reference to the contract put in evidence? A. I did. Q. About what time did you have that conversation? A. The first time I went to see Mr. Thompson was the last of November,—some time in November, 1885. Q. State what conversation you had with him.' Plaintiff objects to the evidence called for by the question upon the ground that its only relevancy to the case can be to prove the agreement alleged in the answer, and that that agreement does not constitute a defense here, because it is not an agreement to extend the time for the payment for this bark, but is simply an agreement to extend the time for the peeling. Second. That the contract set forth in the complaint is a contract under seal, and that it cannot be varied by any oral executory

contract, made without consideration and before breach. Third. That the contract set forth in the complaint is a contract for interest in land, and such contract must be in writing. Under the statute it must all be in writing, and it cannot be added to or varied by any oral contract. The defendants offer to prove, and ask the question for the purpose of proving, that in the month of November or December, 1885, the defendants entered into an oral contract with the plaintiff for enlarging the time for delivery and reducing the quantity of bark to be cut and peeled on the Harris lot mentioned in the contract of April 1, 1885, in evidence, to five hundred cords a year, conditioned upon such change being made satisfactory to one John Wakely, of Stony Creek, Warren county, N. Y., with whom the plaintiff had contract to cut the logs from which the bark sold to defendants was to be taken. That subsequently, and on or about the 25th day of February, 1886, the said defendants made the said contract satisfactory to said Wakely, and at that time entered into the following agreement with him, to wit.[1] That subsequently the defendants, in consideration of and reliance upon said agreements made with the plaintiff April 1, 1885, and November or December, 1885, above mentioned, and the agreement entered into with John J. Wakely under date 25th day of February, 1886, above mentioned, entered into an agreement with Shaw & Co., of Boston, Mass., for the sale of all the bark the defendants had agreed to purchase of the plaintiff under and by the contract of April 1, 1885, the same to be delivered only in quantities of five hundred cords each year, until the whole was delivered; and for a sale and transfer of all the rights of the defendants in and to the contract made between plaintiff and defendants, dated April 1, 1885, as changed by the contract of November or December, 1885, and for the assumption by Shaw & Co. of all the obligations of defendants under the said contract of April, 1885, as modified by the contract of November or December, 1885. That said contracts made with said Wakely and Shaw & Co. were made, and the obligations by defendants thereunder incurred, solely upon the consideration of the making of the contract with plaintiff under date November or December, 1885, for reducing the number of cords of bark to be peeled to 500 cords a year. That said two contracts made by defendants with Wakely and with Shaw & Co. would not have been made except for the agreement of November or December, 1885, made with the plaintiff. That, in the event the plaintiff is now allowed to repudiate the said agreements with him of November or December, 1885, defendants will be subjected to large and irreparable loss. That the defendants agreed to pay the said Wakely for peeling the bark a larger sum than they would otherwise have paid, in consideration of his agreement to peel 500 cords, and no more, annually on the Harris lot mentioned in contract of April 1, 1885. That, in pursuance of all the several agreements above mentioned, the defendants caused to be peeled 500 cords of bark on the said Harris lot during the year 1886, and have paid for the work of peeling the same, and for the purchase price of the bark, as provided in the above-mentioned contracts, and that defendants have in all respects complied with and performed each and every of the covenants, terms, and conditions of each and all the aforesaid contracts. That plaintiff had knowledge of all the foregoing facts at each and all times above mentioned. That the time of the performance of the said contract of April 1, 1885, was upon valid consideration extended so as to provide for the peeling and selling by defendants of only 500 cords of bark during the year 1886, or in any year thereafter. That said contract of April, 1885, as changed, has been fully kept and performed by the parties thereto. That the bark, to recover the purchase price of which this action is brought, was not ordered, cut, or peeled until after the contracts above mentioned were entered into, and until after May 1, 1886. The consideration of the agreement of November, 1885, flows from and rests only on the agreements made by J. J. Wakely and Shaw & Co., above mentioned. Defendants conceded that the contracts entered into in November or December, 1885, and mentioned in the foregoing offer, all rested in parol. Defendants state they do not propose to prove a consideration moving between the plaintiff and defendants in any other way than by

[1]See note p. 573.

the making of the contracts with Wakely and with Shaw & Co., as stated. Plaintiff objects to the question and offer upon the grounds upon which the question is objected to, and also upon the ground that there is no offer to prove a consideration passing between the plaintiff and the defendants directly. That the defendants cannot obviate the effect of the statute of frauds upon such a contract by proving subsequent agreements, made in reliance upon the performance of such contract by the parties. That a contract such as the one in question cannot be varied by way of estoppel or waiver by proving subsequent transactions or contracts made in reliance upon the contract in question. Court rules in conformity with the ruling of general term. Objection sustained. Offer excluded. Defendants except. Plaintiff rests. Defendants' counsel offers to read all the testimony given upon the former trial on the part of the defendants. Objected to on all the grounds above stated. Objection sustained. Defendants except. Defendants offer in evidence contract between the defendants and Wakely at page 15 of the printed case,[1] and offer this in connection with the offer already made. Plaintiff objects to such offer on all the grounds stated in the objection taken. Testimony offered excluded. Exception by defendants. Defendants offer in evidence agreement between Shaw & Co. and the defendants in connection with general offer previously made. Same objection by plaintiff. Objection sustained. Offer excluded. Exception by defendants."

Within the opinion of Learned, J., when this case was before this court on a former appeal, reported in 57 Hun, 288, 10 N. Y. Supp. 597, we must hold that this offered evidence was properly excluded.

[1]The following is the contract referred to: "This agreement, made this 25th day of February, 1886, between Henry Poor & Son, of Boston, Mass., as party of the first part, and John J. Wakely, of the town of Stony Creek, Warren county, N. Y., as party of the second part, witnesseth that the said John J. Wakely, for the consideration hereafter mentioned, promises and agrees to peel and skid for the said Henry Poor & Son all the bark on the lot known as the 'Harris Lot,' situated in the town of Stony Creek, Warren county, N. Y. The said Wakely agrees to peel, the present season, five hundred cords of bark, and is to peel five hundred cords of bark each year, or more each year if the said Henry Poor & Son shall so elect, to the amount of one thousand cords each year, until all the bark is peeled on said lot. All the trees measuring eight inches or more at the butt end are to be peeled, the trees to be peeled to a point where they taper to five inches in diameter. Said bark is to be cut four feet long, to be piled in small piles within twenty-four hours of peeling, and to be well skidded on good log roads in piles of not less than one cord, and four and one-half feet high, and the bark to be put on the log roads in reference to being hauled to the Oregon tannery. The said Henry Poor & Son, party of the first part, agrees to pay to the party of the second part two dollars and twenty-five cents ($2.25) per cord, as follows: One dollar and fifty cents ($1.50) per cord during the peeling of the bark, and the balance to be paid after the bark shall have been measured; bark to be measured within two weeks after it is all piled and ready for measurement, and in measuring the same due allowance is to be made for curly and loosely piled bark. The bark is to be ready for measurement each year by the first day of December, and to be measured by a man selected by Henry Poor & Son, party of the first part, and, in case of a disagreement on the measurement of the bark, the parties are to agree on a man to measure the bark, and his measurement shall be binding to each party. If, after any advance shall have been made, the party of the second part shall fail to perform within a reasonable time their part of this agreement, the party of the first part may enter and perform the labor specified in this agreement, and the expense of the same shall be paid by the party of the second part. In witness whereof we have hereunto signed our respective names.
"Henry Poor & Son.
"By C. P. Van Vleck, Agent.
"John J. Wakely."

It was an attempt to modify by a parol executory contract without consideration a contract in writing and under seal, before breach, when such sealed instrument conveyed an interest in land, and was required by the statute of frauds to be in writing. As to whether or not an equitable estoppel would be created upon the facts as offered to be proved is not quite clear from doubt; but, as that question was also discussed by the learned judge in Thomson v. Poor, supra, we are inclined to follow the conclusion of this court as there expressed. Nor do we think that the objection raised by the learned counsel for the defendants, as to the variance between the complaint and proof, fatal to this recovery. That question was discussed on the former appeal, and this court refused to uphold the judgment for the defendants on the ground of defective allegations in the complaint. While, upon the whole case, I am not free from doubt, I think the judgment should be affirmed. Judgment affirmed, with costs. All concur.