DOMINICK CERVADORO, Appellant, *v.* FIRST NATIONAL BANK & TRUST COMPANY OF HUDSON, Respondent.

Second Department, January 17, 1944.

*Harold H. Feigin* (*Leo Wiener* and *Peter Baumer* with him on the brief), for appellant.

*George C. Inman* for respondent.

CARSWELL, J. The amended complaint alleges that on March 27, 1937, plaintiff made a contract with defendant under which he was to pay defendant $100 and demolish a building in Hudson, N. Y.; that he was immediately to become the owner of the building and its component parts; that he was to be compensated by the salvage, which he was to store on a specified part of the land until such time as the tract should be sold; that he paid defendant $100, began the demolition of the building, and duly performed all the terms of the contract on his part to be performed, except insofar as he was prevented by defendant; that defendant breached the contract in that it refused to permit plaintiff to continue his work thereunder; and that by reason thereof he was damaged in the sum of $7,000.

In its answer defendant set out as a second defense that the contract was oral and, under the Statute of Frauds (Real Property Law, § 259), is void, as it is a contract for the sale of an interest in real property, and is, therefore, required to be in writing.

Defendant moved for summary judgment under rule 113, Rules of Civil Practice. In the affidavit of one of its officers it asserted, *inter alia,* that it orally sold the house to plaintiff and that he agreed " to *promptly* tear down and raze said house to the ground level and to remove the same * * *." Plaintiff, in his affidavit, stated that the action was to recover damages for breach of an agreement under which he was to raze the building; that the parties treated the building as personalty, and that he had partly demolished the building when defendant made a new arrangement with another to demolish the structure and remove the salvage.

The contract has been held to be void, and judgment has been entered dismissing the complaint.

The general rule formerly was that if a person sold a building or thing attached to the land, and the seller was to sever the same and deliver it to the buyer, the contract relating thereto might rest in parol on the theory that it concerned personalty. (*Killmore* v. *Howlett,* 48 N. Y. 569; *Webster* v. *Zielly,* 52 Barb. 482.) Conversely, prior to the enactment of the Uniform Sales Act, if the severance of the building was to be made by the buyer,

the contract constituted a sale of an interest in real property and was required to be in writing. (*Thompson* v. *Poor,* 57 Hun 285; *Volk* v. *Olsen,* 54 Misc. 227; *Green* v. *Armstrong,* 1 Den. 550; *Vorebeck* v. *Roe,* 50 Barb. 302; *Thayer* v. *Rock,* 13 Wend. 53.) Most of the cases which enforced the latter rule related to situations where the severance of the buildings was to be deferred for specified periods or was to be at the buyers' convenience. The rule, however, was not invariable. By their engagements parties were free to treat buildings attached to the land as personalty or chattels, especially where the removal of the same was to be had immediately. (Richardson on Contracts [5th ed.] § 258 and cases cited.)

The versions of both parties herein are that the building was to be " promptly " demolished, and *prima facie* it appears that the parties intended to treat the buildings as personalty. The principle to which we have adverted was given effect in *Melton* v. *Fullerton-Weaver Realty Co.* (214 N. Y. 571, 575). There, as here, the buyer of the building paid a purchase price and was to demolish the building at once and complete the job within a specified time. The buyer was put off the job before the demolition had been completed. The buyer brought an action in conversion for the unsevered and severed materials. It was held that upon the execution of the agreement the title to the building as " a chattel " vested in the buyer and, therefore, an action in conversion was proper inasmuch as personal property was involved in the transaction. The contract was in writing but that fact does not distinguish it from the case at bar. The subject matter of the transaction here was personal property and the form of the contract is regulated by section 85 of the Personal Property Law, which provides that a contract for the sale of personal property valued in excess of fifty dollars " shall not be enforceable by action unless the buyer shall * * * give something * * * in part payment " or the contract shall be in writing. Here a part payment was made, and, therefore, a writing was not needful, just as a writing was not necessary in the *Melton* case (*supra*). The form of the transaction pleaded is in complete compliance with section 85 of the Personal Property Law, and section 259 of the Real Property Law has no application.

This conclusion may rest on a broader foundation, in view of the enactment of the Uniform Sales Act in 1911. One of the changes then effected related to the definition in section 156 of the Personal Property Law of the word " Goods ". That definition reads: " ' Goods ' include all chattels personal other than

things in action and money. *The term includes* emblements, industrial growing crops, and *things attached to or forming part of the land which are agreed to be severed* before sale or *under the contract of sale.*" The building herein was a thing attached to and forming part of the land. The contract here pleaded, under both versions thereof, required the building to be severed from the land immediately " under the contract of sale." Under the above definition it became " goods " or " personal property." The Uniform Sales Act, therefore, has changed the former general rule, wholly apart from the principle enunciated in the *Melton* case (*supra.*) This change has been authoritatively recognized. ('Williston on Sales [2d ed.] § 66; Restatement, Contracts; N. Y. Annot. § 195.)

It follows, therefore, that the contract which plaintiff invokes is valid, and the second defense in the answer is insufficient in law.

The order granting defendant's motion for summary judgment and the judgment entered pursuant thereto should be reversed on the law, with ten dollars costs and disbursements, and the motion should be denied, with ten dollars costs.

HAGARTY, Acting P. J., JOHNSTON, ADEL and LEWIS, JJ., concur.

Order granting motion for summary judgment and the judgment entered pursuant thereto reversed on the law, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.