McCurn, J.
This appeal is from a summary judgment dismissing the plaintiff’s complaint.
The complaint alleges that plaintiff is a corporation engaged in miscellaneous activities including trucking, contracting, wrecking and rigging business. The defendant insurance com *485 pany issued to the plaintiff its so called “ motor truck merchandise policy ” covering certain legal liability hereinafter more specifically mentioned. The complaint alleges that within the policy period the plaintiff transported a two-story house from a location on South Jay Street in Rome, New York to a location on South Madison Street in Rome, New York, and alleges that certain damages were accidentally caused by the plaintiff to the said house in loading and unloading and transporting the said house from its old location to its new location. The owner of the house thereafter brought an action against the plaintiff for the damage sustained, and recovered a judgment against the plaintiff. The defendant insurance company disclaimed liability under its policy and the plaintiff brought this action to recover the amount of the judgment which he was obliged to and did pay together with counsel fees incurred in defending the action and other expenses of the trial.
The defendant’s answer, while admitting the issuance of the policy, is otherwise in substance a general denial. The defendant’s contention is that the moving of a house upon the vehicle in question is not one of the operations covered by the insurance policy and that in any event the damage or loss did not occur through any of the perils specified in the policy. The policy provides:
“ This Policy covers the legal liability of the Assured as a carrier, either as imposed by law or as may be assumed by contract, for direct loss or damage from perils hereinafter specified, on shipments of lawful goods and/or merchandise consisting principally of general merchandise and machinery of all kinds while loaded for shipment on and/or in transit in or on the following described vehicle or vehicles operated by the Assured, * * #
Description op Vehicles • * *
•6 All motor trucks owned, operated, hired and leased by the assured. $5,000.” (Emphasis supplied.)
The first question is, whether the vehicle used to transport the house comes within the policy coverage. The policy by its terms covered “ all motor trucks owned, operated, hired and leased by the assured ”. The vehicle in question as shown by the photographic exhibit appears to be a type of vehicle sometimes called a “low-boy” used in the trucking and rigging business to transport heavy objects. Defendant argues that such a vehicle is not included in the description ‘ ‘ all motor trucks owned, operated, hired and leased by the assured ” as *486 set forth in the policy. It will be noted that the policy does not specifically exclude this type of vehicle.
Generally speaking the ordinary rules for construction of contracts are employed in construing insurance contracts. The intent of the parties is to be ascertained from the language employed if it is clear and unambiguous (Brainard v. New York Central R. R. Co., 242 N. Y. 125, 133). But where an ambiguity is present the contract must be construed in accordance with well-established rules (See Killian v. Metropolitan Life Ins. Co., 251 N. Y. 44, 47; Marcus v. United States Cas. Co., 249 N. Y. 21, 24, 25; Griswold v. Sawyer, 125 N. Y. 411, 415; Howell v. John Hancock Mut. Life Ins. Co., 286 N. Y. 179, 185; Kratzenstein v. Western Assur. Co., 116 N. Y. 54, 59; Birnbaum v. Jamestown Mut. Ins. Co., 298 N. Y. 305, 309, and Burr v. Commercial Travelers Mut. Accident Assn., 295 N. Y. 294, 301). Our view is that an ambiguity is present as to the coverage of the vehicle in question and that it should not be resolved against the plaintiff on a motion for summary judgment.
The next question is whether a house detached from its foundation and loaded onto such a vehicle comes within the subject matter of the insurance — whether it comes within the category of “ lawful goods and/or merchandise. ” “ Merchandise ” is usually defined in general terms as‘including all things which merchants ordinarily sell at wholesale or retail; any movable object of trade or traffic; objects of commerce; commercial commodities usually bought or sold, etc. The word ‘ ‘ goods ’ ’, however, appears to have a broader meaning. As used in the Personal Property Law of this State, “ Goods ’ include all chattels personal other than things in action and money. The term includes emblements, industrial growing crops, and things attached to or forming part of the land which are agreed to be severed before sale or under the contract of sale ” (Personal Property Law, § 156; see, also, Cervadoro v. First Nat. Bank & Trust Co., 267 App. Div. 314). The house involved here is, in our opinion, within the subject matter of the insurance
The next consideration is the hazard insured against. The complaint alleges that the damage was caused to the house “ in loading and unloading and transporting the said house from its old location to its new location.” Examining first the policy, exclusive of any indorsements, it insures against “ legal liability of the Assured * * * for direct loss or damages from perils hereinafter specified, on shipments of lawful goods * * * while loaded for shipment on and/or in transit in or on the following described vehicles operated by the Assured ”. *487 It will be observed that the policy proper applies only to goods in transit and does not include loading or unloading. The perils insured against while goods are in transit are:
(a) Fire, including self-ignition and internal explosion of the conveyance;
(b) Collision, i.e., accidental collision of the vehicle with any other automobile, vehicle or object;
(c) Overturning of vehicle;
(d) Collapse of bridges;
(e) Stranding, sinking, burning and/or collision of any regular ferry, including General Average and/or Salvage Charges, and
(f) Tornado and windstorm.
The complaint does not allege either directly or by inference that the loss was occasioned by any of the enumerated perils. It is clear then that any of the damage which occurred in transit is not covered by the policy.
The next inquiry is whether the damage caused by loading or unloading is covered. There is attached to the policy an indorsement or rider, exhibit “ A ” which provides: “ It is understood and agreed that this policy is extended to cover the assured’s legal liability for loss of or damage to described property directly caused by loading on and unloading from railroad cars and buildings by the use of cranes, dollies, skids, block and tackle and similar apparatus.”
The respondent contends that the perils insured against in the policy proper, viz., fire, collision, overturning of vehicle, collapse of bridge, sinking of a ferry, etc., are the only perils insured against in the loading and unloading indorsement. If so, that indorsement adds little if anything to the policy. The perils so enumerated are readily recognized as potential perils to goods in transit but not as to goods being handled in the course of loading and unloading. It appears extremely doubtful that the average business man upon reading the policy, together with the indorsement, would understand that the indorsement was intended to be so limited. Accordingly, we cannot say upon this record that the perils insured against in the loading and unloading indorsement are confined to the perils enumerated in the policy proper. Uncertainty is apparent which should not be resolved against the plaintiff on a motion for summary judgment.
It will be observed, however, that exhibit “ A ” covers “ loading on and unloading from railroad cars and buildings.” Such language on its face appears to narrow the coverage. The *488 manner in which the premium was computed, however, would indicate otherwise. The policy provides in that regard as follows:
‘ ‘ The Assured agrees to keep an accurate record of the gross receipts from their trucking business during the term of this Policy and to report to the Company by not later than the last day of each month succeeding the month in which this Policy is issued, the full amount of gross receipts (collected and uncollected) from their trucking business during the preceding month or such time as is within the Policy Period and to pay to the Company monthly an earned premium equal to 1% of such receipts. The minimum monthly earned premium payable hereunder shall be $....
“ For the purpose of this insurance the term ‘ Gross Receipts’ shall mean the charges for ordinary packing of goods preparatory to loading, including the handling thereof in loading and unloading, and the actual charges for transporting the goods from original location to destination.” (Emphasis supplied.)
In the absence of language to the contrary, the ordinary businessman would be justified in concluding that since the percentage premium is charged upon all loading and unloading receipts, that all loading and unloading operations are intended to be covered by the policy and its indorsement. Again, there appears an ambiguity which should not be resolved against the plaintiff on a motion for summary judgment.
The defendant in order to be entitled to summary judgment had the burden to establish that the construction which it seeks to put upon the words and expressions used in the policy is the only construction which can fairly be placed thereon (see Hartol Products Co. v. Prudential Ins. Co., 290 N. Y. 44, 49, and Birnbaum v. Jamestown Mut. Ins. Co., 298 N. Y. 305, 309, supra). It will be seen from what has already been said that the argument cannot be successfully made that the policy is free from ambiguity in all of its parts which are essential to sustain the summary judgment.
As already mentioned this complaint alleges that the damage was caused “ in loading and unloading and transporting the said house from its old to its new location ”. The fact that plaintiff may not recover for any damage caused in transporting the house from its old location to its new location, and the fact that the amount sued for includes both types of damage, should not prevent him from proving upon a trial the amount of damage which occurred in the loading and unloading operations. (Bogardus v. United States Fidelity & Guar. Co., 269 App. Div. 615.)
*489 The judgment appealed from should be reversed, with costs, and the motion for summary judgment denied, with $10 costs.
All concur. Present — Taylor, P. J., McCurn, Vaughan, Kimball, and Piper, JJ.
Judgment reversed on the law, with costs, and motion for summary judgment denied, with $10 costs. [See 278 App. Div. 629.]